# Smaw *et als.* v. Young.

*Bill in Equity for Partition of Lands.*

1. *When remainder is vested; decisions establishing rule of property.* A deed conveyed land to G. for life, and provided that, on his death, if he should leave a widow, she should have the use of the land for four years from G.'s death, or during her widowhood, and that, should she die, or marry before the expiration of the four years, the land should be equally divided between the surviving children of the grantor's two daughters. The grantor's daughters were dead, and two children of each of them were living, when the deed was executed. *Held,*—applying the definition of a vested remainder adopted in the cases of *Kumpe v. Coons,* 63 Ala. 448, and *Gindrat v. Western Railway of Alabama,* 96 Ala. 162, on the ground that those decisions, though erroneous in that particular, have established a rule of property which should not now be overturned,—that such children took vested remainders upon the execution of the deed. McCLELLAN. J., dissenting, being of opinion that the cases of *Cumpe v. Coons* and *Gindrat v. Western Railway of Alabama,* should be overruled. BRICKELL, C. J., dissenting from the conclusion that those cases, in respect of such definition, are unsound in principle.

2. *Vested remainder to class of persons; when divested by death of remaindermen.*—Where from the terms of a deed limiting a remainder to the grantor's four grand-children it is clear that the intention of the grantor was that only those of the four who should be living at the termination of the intermediate estates limited by the deed should take all, though the remainder vested upon the execution of the deed, it was divested as to three of the grand-children who died before the falling in of the precedent estate, and the property in its entirety passed to the one grand-child who survived.

APPEAL from the Chancery Court of Green.
Heard before the Hon. WM. H. TAYLOE.

H. M. JUDGE, for appellant, cited 20 Am. & Eng

[Smaw *et als.* v. Young.]

Encyc. of Law, 840 ; *Kennard v. Kennard,* 63 N. H. 303; 4 Kent, Com. 206 ; *Wiggins v. Perkins,* 2 N. E. Rep. 896 ; *Leandors v. Coke,* 122 Ill. 317 ; *Weehaukin Ferry Co. v. Session,* 17 N. J. Eq. 475 ; *Schmanngos v. Gross,* 132 Mass. 142: *Colby v. Duncan,* 139 Mass. 398 ; *Hunt v. Ball,* 37 Me. 333 ; *Peets v. Weise,* 47 N. J. Law, 154 ; *Mercantile Trust & Deposit Co. v. Brown,* 17 Atl. Rep. 937 ; *Greer v. McAphee,* 82 N. C. 187 ; *White v. White,* 86 Ky. 612 ; *Thompson v. Luddington,* 104 Mass. 193 ; *Drew's Admer. v. Drew,* 66 Ala. 455 ; *Phinizy v. Foster,* 90. Ala. 262 ; *Connell v. Cole,* 89 Ala. 381.

JAMES E. WEBB, *contra,* cited *McCroan v. Pope,* 17 Ala. 616 ; *Taylor v. Harwell,* 65 Ala. 1 ; 2 Jarman on Wills, 406, 617 ; *Savage v. Benham,* 17 Ala. 119 ; *Phinizy v. Foster,* 90 Ala. 264 ; *Kumpe v. Coons,* 63 Ala. 452 ; *Hunter v. Green,* 22 Ala. 337 ; 4 Kent, Com. 203 ; *McArthur v. Scott,* 113 U. S. 380 ; 2 Washburn on Real Property, 588, 593, 594 ; *Weston v. Weston,* 125 Mass. 268 ; *Coxall v. Sherrod,* 5 Wal. 288 ; *Smith v. West,* 103 Ill. 332.

THOMAS SEAY, for Fannie and Reuben Seay.

McCLELLAN, J.—In June, 1855, Alexander McAlpine conveyed to Bryant Gulley the lands described in the bill, "to have and to hold the same unto him, the said Bryant Gulley, during his natural lifetime, and in the event he leaves a wife when he dies, his widow shall have use of the aforesaid property for four years from the death of her husband or during her widowhood. Should the widow of the said Gulley die or marry before the expiration of the four years, so soon as the crop on hand shall be gathered, all of the aforesaid property shall be equally divided between the surviving children of my daughters Jane F. Smaw and Sarah A. Smaw." Gulley subsequently married, and died in December, 1887, leaving a widow, who still survives, and who continued in possession of and to hold said land under said deed for the term of four years succeeding the death of her husband, as provided in the deed of Alexander McAlpine. Both the daughters of the grantor referred to in the deed, Jane F. and Sarah A. Smaw, had died before its execution. Jane F. Smaw left surviving her

[Smaw *et als.* v. Young.]

two children, William R. Smaw and Ellen Smaw, who
subsequently intermarried with Thomas Seay : and Sarah
A Smaw also left two children, Mary Smaw and Alice
Smaw. All these children of the grantor's "daughters,
Jane F. Smaw and Sarah A. Smaw," were living at the
time the deed from McAlpine to Gulley was executed.
At the termination of the estate for years in the widow
of Gulley, and also at the time Gulley's death, Alice and
Mary Smaw and Ellen Seay were dead, leaving of said
four children only one, William R. Smaw, surviving.
Ellen Smaw Seay left, surviving, her husband, Thomas
Seay, and two children, Reuben Seay and Fannie Seay.
Mary Smaw died in infancy in 1859, leaving as her only
heir at law Alice Smaw, who subsequently intermarried
with William B. Young, executed a last will devising all
her estate to her said husband, and died in October, 1885.
Her husband survived her, and files this bill for a parti-
tion of the land described in said deed to and among Wil-
liam R. Smaw, Thomas, Reuben and Fannie Seay, in the
right of Ellen Smaw Seay, deceased, and himself, as the
devisee of Alice Smaw Young, in the right of said Alice
and her sister, Mary Smaw ; his claim being that he is
entitled to one-half of the land, William R. Smaw to
one-fourth, and Thomas Seay, for life, and Reuben and
Fannie Seay, in remainder, to one-fourth. The chancel-
lor granted the relief prayed, upon the theory that the
four children of Jane F. and Sarah A. Smaw, all whom
were in life at the time the deed was executed, at once
took vested remainders in the land, which passed as to
Ellen Smaw into her husband and children on her death,
as to Mary Smaw into her sister, Alice, at her death,
and as to said Alice, having thus her own and her sis-
ter's original interests, into the complainant, Young, by
the last will of his wife, the said Alice Smaw Young.

The chancellor could not have reached a different con-
clusion upon the question whether the four children of
Jane F. and Sarah A. Smaw took vested remainders in
the land, with a due regard to the authorities of control-
ling force upon his action. He was bound to hold the
remainder vested by the former adjudications of this
court. We will briefly refer to them. In *Hunter, Exe-
cutor, v. Green,* 22 Ala. 329, there was a devise and be-
quest in the first clause of a will to the testator's wife
as follows : "That she may have a comfortable

support and maintenance, I give her the tract of
land on which I now live, together with all my prop-
erty of every kind whatsoever that I may die possessed
of, for her use during her natural life." A subsequent
clause was as follows: "I give and bequeath to my
niece, Anne Finley, my negro boy, Franklin, to her and
her heirs forever, and also my negro girl Peggy, until
she arrive at the age of twenty-five years, at which age
she is to be emancipated." And it was held that Anne
Finley took a vested remainder in the slaves bequeathed
to her, limited upon the life estate of testator's widow,
the court saying: "What, then, was the estate which
Anne Finley took in this bequest, at the death of the
testator? Not a contingent remainder, as is contended
by the defendant would be the case with this construc-
tion of the will, but a vested remainder—an interest in
her which would pass to her representatives at her death,
and which she could alienate by bequest or conveyance.
In speaking of the test as to whether a remainder is
vested or contingent, Chancellor Kent says: "It is the
present capacity of taking effect in possession, if the
possession were to become vacant, and not the certainty
that the possession will become vacant, before the estate
limited in remainder determines, that distinguishes a
vested from a contingent remainder. When the event
on which the preceding estate is limited must happen,
and when it also may happen before the expiration of
the estate limited in remainder, that remainder is vested;
as is the case of a lease to A. for life, remainder to B.
during the life of A., the preceding estate determines on
an event which must happen; and it may determine by
forfeiture or surrender before the expiration of A.'s life,
and the remainder is therefore vested. A remainder
limited upon an estate tail is held to be vested, though
it must be uncertain whether it will ever take place.' 4
Kent Com. 103. Again, in defining a contingent re-
mainder, the same author says: 'It is not the uncer-
tainty of enjoyment in the future, but the uncertainty
of the right of that enjoyment, which marks the
difference between a vested and contingent interest.' Ib.
206. This is conclusive to show that the actual estate
which Anne Finley took was a vested. and not a contin-
gent, remainder."

In the case of *Kumpe v. Coons*, 63 Ala. 448, there was

[Smaw *et als.* v. Young.]

a devise to Mrs. Barclay for life, with remainder over to her children living at the time of her death, the language of the will being: ''Subject to said charge for the support of my mother-in-law, I devise said lands to Mildred A. Barclay during her natural life;  *  *  I devise said lands, after her death, to the children of the said Mildred A. Barclay then living and the descendants of any deceased child or children;'' and this was held to create a vested remainder in the children of Mildred A. Barclay who were living at the time of the death, not of Mrs. Barclay, but of the testator, the court by BRICKELL, C. J. saying: ''The gift over to the *then living children* of Mrs. Barclay, on the termination of her estate for life, is a vested, as distinguished from a contingent remainder. 'It is' says Chancellor Kent, 'the present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant, before the estate limited in remainder determines, that distinguished a vested from a contingent remainder.' The death of Mrs. Barclay could happen before the death of any of her children ; and if it did the gift in remainder would immediately vest in possession.—4 Kent, 232. Her children, consequently, have a direct and immediate interest in any suit or controversy involving the validity of the will ; and, according to the rules of the common law, would be incompetent witnesses in such suit or controversy." pp. 452-3.

The question came before us again in the case of *Gindrat v. Western Railway of Alabama*, 96 Ala. 162. The facts pertinent to this point of that case were these : On July 17, 1845, John Nickel conveyed certain lands to John H. Gindrat. The deed had this habendum clause : ''To have and to hold unto himself, his heirs and assigns forever, in special trust and confidence nevertheless for the sole and separate use, benefit and behoof of Sarah E. Gindrat, during the time of her natural life, and at her death said premises shall be held in trust for her three children, to-wit : Abraham Gindrat, Mary Elizabeth Winter and William B. Gindrat, for and during the terms of their natural lives, and at their deaths, the same shall vest in the heirs at law or children of them, the said Abraham, Mary Elizabeth and William B., that may be living at the time of their deaths." As to the character of the remainder given

[Smaw *et als.* v. Young.]

by this instrument to the children of second life tenants, or rather of Abraham Gindrat, one of them, this court said : "If Abraham Gindrat had a child *in esse* on July 17, 1845, the remainder to his children at once vested in such child, and thereafter opened and let in after-born children as they came into being. This on the familiar principle, that the uncertainty which prevents the vesting of a remainder must have reference to the present right of future enjoyment, and not to the enjoyment itself; or, in other words, if when the final remainder was created, there was a person *in esse* entitled to take in possession immediately upon the termination of the precedent life estate, the remainder became at once a vested estate in him, however great should be the uncertainty as to whether he would in fact ever come into the possession and enjoyment of the estate ; for, as declared by Chancellor Kent, "it is the present capacity"—&c., &c., quoting as above.

It is to be noted that all these cases are based upon the supposed authority of Chancellor Kent, and particularly upon his seemingly unequivocal indorsement of the proposition that a vested remainder exists whenever there is a limitation over after a particular estate, of the requisite character, and "there is a person in being who would have an immediate right to the possession of the land upon the ceasing of the intermediate or precedent estate." Upon the authority of Chancellor Kent, the Supreme Court of the United States has reached the same conclusion as this court on the question, and in *Croxall v. Sheperd*, after setting forth what is quoted above from his commentaries with approval, has declared : "When an estate is granted to one for life, and to such of his children as should be living at his death, a present right to future possession vests at once in such as are living, subject to open and let in after-born children, and to be divested as to those who shall die without issue ;" and it was accordingly held that, as Thomas Croxall, one of the children thus referred to in the deed, was living at the time of its execution, he "took at once an estate vested in right, and deferred only as to the time of possession and enjoyment." 5 Wall. 268, 287–8. And the like view has been taken and decisions rendered by the Supreme Courts of Illinois and Indiana, *Smith v. West*, 103 Ill. 332; *Davidson v. Roebler*, 76 Ind. 398;

*Wood v. Robertson*, 113 'Ind. 323, and probably of some other states.

If this ·line of authority is to be affirmed and followed, the conclusion of the chancellor as to the character of the remainders to the surviving children of Jane F. and Mary A. Smaw; we repeat, is sound, though, as we shall see further on, even adopting that conclusion, the results established by the decree below do not follow. But a majority of the court are now of the opinion, and believe it to be demonstrable, that those decisious are opposed to the weight of authority, and unsound in principle ; and the writer favors the overruling of the cases of *Kumpe v. Coons* and *Gindrat v. Western Railway of Alabama.*

The proposition indorsed by Chancellor Kent and which, mainly because of his approval of it, has misled this court into what we now deem an erroneous position, has a history which goes to show it should not have been received by this and some other courts as a correct exposition of the law. It originated in the Revised Statutes of the State of New York, where it was apparently undertaken, not to declare what should constitute a vested remainder, but to define such remainder as it was supposed to exist at common law. The New York statutes declared that, "Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate." And it was with reference to this provision that Chancellor Kent said : "The definition of a vested remainder in the New York Revised Statutes appears to be accurately and fully expressed." Now, the legal fact is, whatever may have been the intention of the New York codifiers or legislators to the contrary, that provision considered by itself was not a definition of a vested remainder at common law, but was a declaration of what should constitute that estate under the statutory law of New York; and the Court of Appeals of that State has ·so decided, holding in effect that the statute, by eliminating the personal element from the notion of a vested remainder, has made a vested estate something other and different from anything known to the common law.—20 Am. & Eng. Ency. of Law, p. 844; *Moore v. Littel,* 41 N. Y. 66, 76.

The difference between a vested remainder under the statute and at common law lies in the fact that under the statute all members of a class who are in life at any time during the particular estate will take vested remainders, even though the instrument creating the estates nominates those only of such class as shall be *in esse* when the particular estate falls in to take in remainder at all; for they clearly come within the words of the enactment as persons "in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate; while at common law under such an instrument those only of the class who should be in life when the precedent estate ceased are entitled to take at all; and as the members of that class who will survive the life tenant cannot be ascertained until the death of such tenant, until that event it is uncertain that any given one of the class will ever fill the description of the will or deed and have a right to the estate in remainder; and hence the remainder is contingent pending the particular estate, because, while that continues the identity of the remainderman is not, and cannot be, ascertained and fixed. The difference may be illustrated by the facts in the case of *Kumpe v. Coons, supra,* where there was a devise to Mildred A. Barclay, for her life, with remainder over "after her death to the children of the said Mildred A. Barclay then living," &c. Now, it is most clear that the intention here was that none of the children of Mrs. Barclay who should die before she did—who should not be living "after her death"—should take any estate in the devised land. Under the statute of New York every child of Mrs. Barclay in life while she was tenant of the particular estate would take a vested remainder, though it appear never so clearly that children then in being could not with certainty fill the description of the will, nor meet the intention of the testator, for *non constat* but that they would die before her estate terminated, and hence might never belong to the only class which alone is designated to take it at all—children living after her death. But at common law no estate would vest in her children while she survived, because it is essential to vestiture of any title and estate in any person that such person be ascertained and identified, which, in the case put, is impossible so long as the life estate continues—and a re

mainder either vests in right during the life estate or it cannot be a vested remainder at all—since there is no certainty while she lives that any of her children, or any particular one or more of her children, will survive her, and fill the description of the will of ''children living after her death,'' who only are to take any estate under that instrument.

This law of New York has been carried by legislative enactment into the law of some other states; but Alabama is not one of them, and we must look alone to the common law for definitions of vested and contingent remainders; and, upon those definitions, it is demonstrable—in line with what is said above—that the remainder attempted to be limited by this deed to the children of Jane F. and Sarah A. Smaw was not a vested remainder, and that—upon a consideration to be discussed further on—it would not at common law have been a contingent remainder. The authorities, with the exceptions to which we have referred, and which in reality go upon the New York statute and Chancellor Kent's seeming approval of it as a common law definition, are uniform and direct in support of the concrete proposition that under a devise or conveyance to A. for life, with remainder in fee to such of the children of B. as should be living at the death of A., children of B. in life during the continuance of the particular estate in A. take a contingent, and not a vested, remainder. We state the proposition in this form because it covers the case we have in hand in respect of the enquiry whether the remainder vested in the children of the grantor's daughters, though this statement does not involve one fact in the present case which defeats the remainder as a contingent one also. If we leave out of view of Chancellor Kent's inadvertent approval of the New York statute as a definition of a vested remainder, and look alone to his own formulation of definitions of both sorts of remainder, his text is itself a strong authority in support of the proposition stated above. Omitting his reference to that statute, we here repeat for convenience of reference so much of his definitions as bear upon the case we have: ''Remainders, [he says], are of two sorts, vested and contingent. An estate is vested when there is an immediate right of present enjoyment [which is not a remainder but an estate *in presenti*], or a present fixed right of·

future enjoyment [which is a vested remainder]. It gives legal or equitable seizen. * * * * * * A grant of an estate to A. for life, with remainder in fee to B., or to A. for life, and after his death, to B. in fee, is a grant of a fixed right of immediate enjoyment in A., and a fixed right of future enjoyment in B. * * * * * A vested remainder is a fixed interest, to take effect in possession after a particular estate is spent. If it be uncertain whether a use or estate limited *in future* shall ever vest, that use or estate is said to be a contingency. But though it may be uncertain whether an estate will ever take effect *in possession,* it will nevertheless be a vested remainder if the interest be fixed. *. * * * * A grant to A. for life, remainder to B. and the heirs of his body, is a vested remainder, and yet it is uncertain whether B. may not die without heirs of his body, before the death of A., and so the remainder never take effect in possession. Every remainderman may die, and without issue, before the death of the tenant for life. It is the present *capacity* of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remaider determines, that distinguishes a vested from a contingent remainder. * * * * * * A contingent remainder is limited so as to depend on an event or condition which is dubious and uncertain, or may never happen or be performed, or not until after the determination of the particular estate. It is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment, which marks the difference between a vested and contingent interest. * * * * * The definition of a contingent remainder embraces four classes of them ; and Mr. Fearne is of opinion that every known instance of a contingent remainder may be reduced to one or the other of the following classes : * * * (4) The fourth class of contingent remainders is where the person to whom the remainder is limited is not ascertained, or is not in being. As in the case of a limitation to two persons for life, remainder to the survivor of them ; or in the case of a lease to A. for life, remainder to the right heirs of B. then living." And in a note Kent states, with apparent preference of it over the classification of Mr. Fearne, that of Blackstone, to the effect that con-

tingent remainders of are two kinds, viz. : "remainders limited to take effect either to a dubious and uncertain *person*, or upon a dubious and uncertain *event*." It is manifest from these excerpts from his commentaries that Chancellor Kent had constantly in mind, except when formulating his approval of the New York definition, and in every pertinent connection expressed the idea, that one essential constituent of a vested remainder is that the right to take in the future should be *fixed* pending the preceding estate, and that throughout he intended by the use of this word to imply that the *person* to ultimately take in possession should be ascertained and identified, and that when the right to take upon the falling in of the life estate is not so fixed,—when the person nominated to take is uncertain, unascertained and unidentified during the particular estate,—the remainder is contingent, and is not vested. And the oft-quoted statements of this author : "It is the present *capacity* of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder ;" and, "It is not the uncertainty of enjoyment in future, but the uncertainty of the right to that enjoyment, which marks the difference between a vested and contingent remainder,"—when considered along with this controlling idea of certainty of person, which runs through all he has written on the subject,—are to be taken as meaning no more than this : That the estate in remainder being fixed in an ascertained person, its capacity of taking effect in possession immediately upon the possession becoming vacant excludes the possibility of contingencies which would prevent a vesting of the estate in right of future enjoyment in such person, and this though by reason of his own death prior to that of the tenant for life the remainderman might never take in possession and enjoyment at all ; or, in other words, the capacity of taking effect in possession if the possession were to become vacant, coupled with the present ascertainment of the person who is designed to take when the possession does become vacant, distinguishes a vested from a contingent remainder ; but if there be not only the uncertainty of the future enjoyment, which

is incident to all remainders, and has no bearing upon
whether they be vested or contingent, but also uncer-
tainty throughout the period of the precedent estate as
to who has the present right to such future enjoyment,
—the uncertainty as to what particular person or per-
sons are intended by the grantor or devisor to take any
estate,—the estate in remainder is contingent. For
whatever *capacity* the estate may have of taking effect
in possession in the children of B., in the case put, if
the possession were to become vacant, it is impossible,
so long as A. lives and fills the possession to say which
one or more of these children will survive A.; and no
estate of any character is granted to any of them who do
not survive A. Again, Chancellor Kent fully recognizes
the necessity for certainty during the particular estate
in respect of the identity of the person intended to take
in remainder, by incorporating in his text Fearne's defi-
nition of contingent remainders and their classification.
According to this definition, a remainder is contingent,
as we have seen, where the person to whom the remain-
der is limited is unascertained. And so in a note to this
text, written by the author himself, the definition of
Blackstone of a contingent remainder, which makes un-
certainty as to the person designed by the grantor to
take a distinguishing mark thereof, is expressly ap-
proved. So that it is clear that, while Kent may have
been inadvertent in approving the definition of the New
York Revised Statutes, he was not himself led away
from the fundamental requisite of certainty as to the
identity of the remainderman in the constitution of a
vested remainder. Indeed, while the New York defini-
tion of a vested remainder standing by itself, as it does
in the text of Kent's Commentaries, is doubtless open to
the interpretation of it which has been adopted by the
courts of that State, and which vests estates in persons
who were never intended by grantors to take at all, yet
when the whole section of the statute of which this defi-
nition is only a part is read, it is exceedingly doubtful
whether the courts or Kent are in error about it. The
section is as follows: "Future estates are either vested
or contingent. They are vested, when there is a person
in being, who would have an immediate right to the
possession of the lands, upon the ceasing of the interme-
diate or precedent estate. They are contingent, whilst

the person to whom, or the event upon which they are limited to take effect, remains uncertain. 4 N. Y. Rev. Stat. p. 2432, § 13. Construing the two definitions together, it would seem that the latter excludes from the former all cases in which the remainderman is not ascertainable during the particular estate, so that the former could not embrace estates limited to take effect to such of the children of B. as should be living on the death of A., the life tenant, merely because B. had children in life during the particular estate who would have an immediate right of possession should the possession become vacant, as it has been construed by the courts. But, be that as it may, the learned commentator leaves no room to doubt that in his opinion there could be no vested remainder under an instrument which neither names the remainderman, nor furnishes any means of ascertaining them prior to the falling in of the precedent estate.—4 Kent's Com., pp. 202–209, and notes.

The first other authority we refer to is a note by one of the editors of a late edition of Kent's Commentaries, and as it states the law of the case we are considering succinctly yet fully, we insert it here: "Mr. Williams, in his work on real property, considers that if an estate is always ready, from its commencement to its end, to come into possession the moment the prior estates determine, it is a vested remainder; which seems also to be the meaning of the New York Revised Statutes. A comparison of two cases will disclose a defect in these definitions. If land is devised to the testator's wife for life, and at her death to such of the testator's children as shall be then living, and the testator dies leaving children in his wife's lifetime, the persons who would take at any given instant, if the wife's estate should determine then, are ascertained, and the remainder is always ready to come into possession at any moment. Yet this is unquestionably a contingent remainder, as held in *Olney v. Hull*, 21 Pick. 311; *Thomson v. Ludington*, 104 Mass. 193. On the other hand, a devise to testator's wife for life, remainder to B., C., D., E. and F. 'provided that if any of the last five named children die before my wife, then the property to be equally divided between the survivors,' gives a vested remainder, defeasible on condition subsequent. In the case last put the remaindermen already answer to the description by

which they are to take, viz., B., C., &c.   In the former case, on the other hand, they do not, for they do not take as B., C., &c., but as *survivors* of A., and there are no devisees to answer the whole of the requisite description.   L. R. 5 Eq. 402.   It is obvious that the enjoyment of the remainder by B. or C. depends upon the same contingencies in the one case as in the other, and it might be thought that when this is so, the description by which the remaindermen are to take must be the same in both cases, if the substance be regarded more than verbal distinctions.   But it will be remembered that whether a certain limitation creates a vested or contingent remainder may depend upon the intent of the party creating it as well as upon the conditions of its taking effect.   The different words used in expressing the same contingencies sufficiently show a different intent in the two cases.   In the first case, the benefit does not purport to be conferred on the children as children, or as individuals named, but as survivors, which indicates that an immediate vesting is not intended; in the second case, the devise is to them as B., C. &c., and there is no obstacle to supposing an immediate vesting to have be intended."—4 Kent's Com., p. 203, n. 1.

There is another admirable statement of the law in Vol. 20, Am. & Eng. Encyc. of Law, pp. 841–845, as follows : "The fact that the remainder from the very instant of its creation is capable of taking effect in possession or enjoyment at any moment the possession or enjoyment may become vacant by the determination of the particular estate does not, as is frequently asserted, necessarily show that it is vested, nor yet is it quite accurate to say that 'when it is certain that the remainder may take effect in possession, on the determination of the preceeding estates of freehold, at whatever time, and however early, and by whatever means, these estates may determine,' the remainder must be considered as vested.   Thus if an estate be limited to two for life, remainder to the survivor of them in fee, the remainder is contingent, for until one of them may die, it is uncertain which will be the survivor; or if the land be limited to A for life, remainder to 'such of his children as shall be living at his decease,' each child has but a contingent remainder during A's life, since until his

death it is impossible to tell which of the children will answer the description, and yet, inasmuch under both these limitations the person or persons who are take are ascertained immediately on the determination of the particular estate, the remainders may well be said to be capable of taking effect in possession or enjoyment at any particular moment the possession or enjoyment may become vacant by the death of the life tenant, and may well be said to be certain to take effect on that event unless the remainder-men predecease the life tenant. A moment's consideration shows that the apparent anomaly arises from the fact that whether the remainders will ever take effect in possession really depends upon two contingencies, (1) whether the remainder-men answer the description, (2) whether they survive the life tenant, and that the first depends upon the second and seems to be merged in it, whereas in reality, until the life tenant dies, it always exists, and affects the remainders with a contingency irrespective of their own duration. It is, therefore, submitted that, in order that a remainder may vest in interest, not only must it be capable of taking effect in possession at any moment the possession may become vacant, but there must also be some certain and determinable person *in esse* and ascertained who answers the description of the remainderman at some time during the continuance of the particular estate, and not merely at its determination. Thus, if the land be limited to the use of A for life, remainder to the use of the oldest son of B for life, subject to a power of revocation and new appointment by C, the remainder is contingent until B has a son, in whom it vests immediately at his birth, because from that time on there is some one *in esse* who answers the description to whom the estate may take effect in possession at any moment the possession becomes vacant by the death of A. And yet, if C revokes B.'s use, thereby divesting him of all interest in the property, or if B dies before A, or surrenders to the reversioner, the estate will never take effect in possession. The American cases upon the subject may be divided into two classes: (1) Those based upon the common law, which it is believed will be found to sustain the foregoing principles, and, (2), those based upon the definition of a vested estate contained in the New York Revised Statutes, in which a fu-

ture estate is declared to be vested "when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate,' thus making the test depend solely upon the present capacity to·take effect. in possession if the possession were to become vacant, without regard to whether or not there is a person *in esse* capable of answering the description of ͺthe remainder-man before the determination of the particular estate. It may well be doubted whether this piece of legislative definition was intended to change the common· law ; the probability is that its framers considered it a peculiarly happy instance of the codification of the existing law on the subject; even Chancellor Kent says that it 'appears to be accurately and fully expressed.' The New York court of appeals has, however, decided that, by eliminating the personal element from the notion of a vested remainder, it has made a vested estate under the statute something other and different from anything known to the common law. As might have been been expected, upon the authority of Kent's statement, the decisions of the New York courts, under the statute, have beenͺaccepted and followed in other States as authoritative expositions of the nature of a vested remainder at common law, and great confusion has naturally arisen." And to this text is appended a note which clearly sets forth and illustrates the principle involved, and cites many of the authorities supporting it.

And we find nowhere a better definition of a vested remainder than that given by the Supreme Court of Pennsylvania, viz : "Where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of the particular estate, which estate is determined by an event which must unavoidably happen by the efflux of time ; the remainder vests in interest as soon as the remainder-man is *in esse* and ascercertained ; provided that nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession."—*Sager v. Galloway*, 113 Pa. St. 509.

Upon these principles, which do not require further elaboration of statement, and upon these authorities, to which many others might be added, it is beyond con-

troversy, we think, that under the deed of Alexander McAlpine conveying—or attempting to convey—a remainder in the land in suit, not to the children of Jane F. and Sarah A. Smaw by name or as children, but to such only of said children as should survive Gulley, the life tenant, and Gulley's widow's term of years, should he leave a widow,—the *survivors* of said children at the termination of the precedent estates,—none of said children during the particular estates took any vested interest whatever, because up to the moment the particular estates determined they did not fill the description of the instrument, which called for *survivors* at that time, and survivors only; and until that time arrived it was impossible to ascertain who of the class from which the remainder-man was to come would ever be entitled at all to take any estate under the deed.

We have all along assumed that the word "surviving" in the McAlpine deed referred to the death of Gulley or, in case he left a widow, to her marriage, or the termination of her term of years. The deed itself supports this view, and the extrinsic facts, it seems to us, leave no doubt of its correctness. As we have seen, both Jane F. and Sarah A. Smaw were dead when this deed was executed. It does not appear but that the two children of each who were then living were the only children that had been born to them. The instrument took effect presently. There was, therefore, no occasion to speak of the children of the grantor's deceased daughters as then surviving; and it is to be presumed they would not thus have been described if it had been the intention to confer an estate upon them all, but that, as they were the only persons who could ever answer the description of children of said daughters, they would have been described as such children simply, or designated by name.

Construing the McAlpine deed, therefore, to have reference to the falling in of the particular estate, the remainders attempted to be limited over, the majority of the court think, would not, on principle and the great weight of authority, be vested remainders. Nor would they be contingent remainders, if we are to go upon the doctrines of the common law, because an estate for years was to precede their taking effect in possession. The term of four years which under the deed would or might, and, in fact, did pass into the widow of Gulley was fatal

to the existence of any contingent remainder under the instrument.—1 Fearne Rem., 281 ; 2 Fearne Rem. 761–2 ; 4 Kent's Com. pp. 236–7 ; 2 Wash. Real Prop. p. 589. So that, if we are to go upon common law principles, this deed created neither a vested nor contingent remainder, and there would be no field for the operation of our statute which abolishes contingent remainders, and gives to estates which would have been such remainders at common law the properties of executory devises.—Code, § 1826. But, under another statutory provision, the limitation over would be saved and enforced, notwithstanding its abortiveness to create a contingent remainder. Section 1833 of the Code is as follows: "Lands may be conveyed, within the limits fixed by law, so as to avoid perpetuities, and subject to such other restrictions as are imposed by this Code, for such terms as the owner thinks proper ; and the courts are enjoined in such cases to give effect to the intent and meaning of the parties." The operation of this provision upon a conveyance by which it is attempted to limit a contingent remainder on an estate for years, or any estate less than a freehold, would necessarily be to displace the principle of the common law to which we have adverted, whereby the limitation over would be avoided *ab initio*, and to render any conveyance of a future estate, however contingent and wanting in a freehold to support it, perfectly operative and effective to the creation and existence of such estate,—the sole inquiry being whether such was the intention of the grantor.

Going, therefore, upon the common law to the conclusion that the remainder over set down in this deed was not a vested remainder in Ellen, Alice, Mary and Wm. R. Smaw, and was void as a contingent remainder, and upon the terms of the deed to the conclusion that the intention of the grantor was that the survivors of these four children of the grantor at the death of Gulley, or the end of the four years term of his widow succeeding his death, should take the land in fee, and upon section 1833 of the Code to the conclusion that such survivor or survivors were entitled to take, notwithstanding the invalidity of the limitation over as a contingent remainder at common law and the consequent inapplicability of section 1826 of the Code,—it must and does follow as a final conclusion of the case, thus considered, that Wm.

35

R. Smaw, who alone survived Gulley, and who also alone survived the four years term in Gulley's widow, is alone entitled to the land; and that, therefore, the bill for partition should have been dismissed.

But, as has already been said, a majority of the court, while fully concurring in the foregoing discussion and conclusion as to the unsoundness in principle and upon authority of the definition of a vested remainder adopted by this court in the cases of *Kumpe v. Coons* and *Gindrat v. Western Railway of Alabama, supra*, are yet unwilling to overrule those cases, on the ground that they have established a rule of property in the State which should not now be overturned. And the position of Chief Justice BRICKELL is, that those cases, in the respect under consideration, are sound upon principle. So that they stand as the law of this State and of this case. Under them, each of the children of Jane F. and Mary A. Smaw took vested remainders in this land upon the execution of the deed, all of them being then *in esse* and capable of taking in possession immediately upon the falling in of the precedent estate or estates, thus filling the terms of the New York definition of a vested remainder as followed and adopted in the cases referred to. But along with, and as a necessary part of, this New York doctrine, has sprung up another principle, which the courts, following that idea, have been forced to accommodate and adopt in order to give any effect to the manifest intention of the grantor in a deed like that under consideration. This manifest intention is that only those of the class nominated to take in remainder who shall be living at the falling in of the particular estate shall take at all. Ordinarily, the notion of a vested remainder involves its transmissibility to the heirs of a remainderman dying pending the particular estate. But the courts at once saw that if this quality was allowed to attach to remainders under the New York definition, the result would be to entirely defeat the intention of the grantor in cases like this, inasmuch as that, while the intention clearly is to give the whole estate to those who shall survive the particular estate, and to them only, if the shares of those who do not survive, and hence were not meant to take anything, were allowed to descend to their heirs at law, the survivor would take only a portion of a whole, all

which was intended for him; as, for example, this case, where the intention, tolled by the result as to survivorship, was that Wm. R. Smaw should have the whole estate in remainder, if the descendible quality were allowed to attach to this remainder, he would take only an undivided one-fourth interest as tenant in common with the heirs of Mary, Alice and Ellen Smaw, who died before the ceasing of the intermediate estates, and hence were not intended to take any estate whatever. To avoid such manifest violence to the clear intent of grantors and testators, the doctrine by which such "vested" remainders were defeated through the death of such "vested" remainderman before the termination of the particular estate was adopted and applied to all remainders acquiring their vested character only under the New York definition. Thus, in a note in the Encyclopaedia of Law it is said: "Cases founded upon the definition of a vested estate contained in the New York Revised Statutes, under which it is held that where the limitation is so framed that the persons to take as remaindermen under the description are determined *eo instanti* the particular estate expires, one who will answer to the description if he survive the life tenant takes a vested interest, subject to being divested in the event of his death before the life tenant."—20 Am. & Eng. Encyc. of Law, p. 846. So, in the leading case in New York upon this definition, it was held that the contingency of the death of one of a class, as children of B, for instance, those of whom only who survive the the particular estate are to take under the deed or will,— and which contingency would have clearly marked the remainder as contingent at common law,—is a condition subsequent to the vesting of the estate,—and not precedent, as at common law,—and, of consequence, that the happening of this contingency pending the particular *estate operates to divest the already vested estate, to save it from the heirs of such decedent, and to pass it in its entirety into those of the class who shall survive the intermediate estate.* *Moore v. Littell,* 41 N. Y. 66. This is the settled doctrine of the court of last resort of that State, which, more than any other court, is entitled to speak with controlling authority on this subject. The Supreme Court of the United States, one of the few courts to receive this New York idea, recognizes the same doctrine as a neces-

[George, *et al.* v. New England Mortgage Security Co.]

sary ° adjunct to it.—*Croxall v. Sherrod, supra.* And if we accept the one, as we have in *Kumpe v. Coons* and *Gindrat v. Western Railway of Alabama,* and adhere to it, as we do by declining to overrule those cases, we must accept and apply the other. In no other possible way can the most palpable violence to the intention of grantors and devisors in cases like the present be avoided.

Applying this doctrine, of divestiture of remainders, vested only under the New York notion of such estates, by the death of a remainderman pending the particular estate, to the case at bar, the result is the same as we reached and declared upon common law principles, in connection with section 1833 of the Code : Wm. R. Smaw takes the whole estate. The remainders, which, according to the New York law, as followed in our own cases, vested pending the precedent estates in Mary, Alice, Ellen and Wm. R. Smaw, were, by the successive deaths of the three first named, divested out of and wholly defeated as to them prior to the determination of the intermediate estates, and continued vested solely in him up to the time for the vesting of the estate in possession and enjoyment,. as was before in right of future possession and enjoyment; and he took the whole estate. So that upon this view, as well as upon the other as to the constituents of vested remainders, the bill for partition should have been dismissed at the hearing. The complainant had no estate or·interest in the land he sought to have partitioned. The decree of the Chancery Court must, therefore, be reversed, and a decree will be here entered dismissing the bill.

Reversed and remanded.