# Kelly v. Deegan.

*Bill in Equity for Sale of Land for Partition.*

1. *Joinder of appeals; two distinct decrees can not be joined in one appeal; partition of land.*—A decree confirming a sale of land for partition and a subsequent decree dismissing a petition of one of the co-tenants, asking for a particular disposition of the proceeds of the sale, are two distinct and final decrees, and can not be joined in a single appeal for revision in this court.

[Kelly v. Deegan.]

2. *Sale of land for partition; rights of life tenant to proceeds.*—Where, after the death of a co-tenant, who devised his undivided half interest in land owned in common to a certain named person for life, with remainder over in fee to a designated devisee, the surviving co-tenant obtains a sale of the land for partition, the holder of the life estate under the will of the deceased co-tenant is not entitled to have severed and set apart to him absolutely out of the proceeds of sale the value of the life estate; but such tenant for life is only entitled to the use for life of so much of the money derived from the sale as was the interest of the deceased tenant in common.

3. *Sale of land for partition; rights of life tenant and remainderman to the proceeds; decree.*—Where, after the death of a co-tenant, who devised his undivided half interest in the land owned in common to a certain named person for life, with remainder over to a designated devisee, the surviving co-tenant obtains ·in a court of chancery a sale of the land for partition, in awarding his rights to the tenant for life under the will of the deceased co-tenant, the rights of the remainderman should be protected and preserved; and by decree the life tenant should be permitted to receive the decedent's share of the proceeds upon the execution of a proper bond, payable to the remainderman, with at least two good and sufficient sureties, and conditioned that on his death the money shall be restored to the remainderman, and with the further ·condition that the court may, when deemed necessary, require new or additional security, and if not given the money will be restored as the court· may order; and if such bond be not given, the court should order the money loaned· by the register, the interest to be collected annually, and, after deducting taxes and necessary costs, paid to the life tenant.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. WILLIAM H. TAYLOE.

The facts of the case are sufficiently stated in the opinion.

GREGORY L. and H. T. SMITH, for appellant.—This decree was based upon the idea that the purchase-money was substituted in the place of the property from the sale of which it was realized, and that it must be kept together until the death of the life tenant.

That this theory is fallacious, and that the money can be, and should be, divided between the life tenant and the remaindermen in accordance with the established tables of mortality, of which our courts take ·judicial notice, (*McDonnell v. Ala. G. L. Ins. Co.*, 85 Ala. 40 ), has been so fully and satisfactorily settled, and the entire question so ably discussed in the first case cited below,

[Kelly v. Deegan.]

which has been quoted with approval by our own Supreme
Court in *Thompson v. Thompson*, 107 Ala. 163, that we
deem it only necessary to refer to that case.—*Foster v.
Hilliard*, 1 Story 77; Fed. Cases, No. 4972; .Freeman
on Partition, (2d ed.), 549.

GEORGE J. SULLIVAN and L. H. FAITH, *contra.*—For
the making of this decree the chancellor had the very
highest authority that could have obtained in the prem-
ises—an adjudication of the Supreme Court of Alabama.
"By authority of the statute, the chancery court may, in
all cases in which the party asking for partition
is entitled, decree a sale, and divide the proceeds,
when the property can not be equitably divided."—*Show
v. Beers*, 84 Ind. 528. The interests of the remaindermen
need not be thereby endangered; for the court may
secure the forthcoming of their share of the proceeds at
the termination of the particular estate, by requiring
bond and security before turning it over to the life
tenant.—*McQueen v. Turner*, 91 Ala. 277.

2. The court had the power to make the order ren-
dered in this case, confirming the sale and directing the
distribution of the money.—Rules 1 and 80 Chancery
Practice; *Ex parte Branch*, 63 Ala. 383; *Forrest v. Lud-
dington*, 68 Ala. 1; *Hooper v. Strahan*, 71 Ala. 75; Code
of 1886, § 3591; Freeman on Coten. & Part., § 549.

3. The power of the courts, so far as derived from
any statute law of this State, to ascertain the present
cash value of a life estate and apportion a fund between
the life tenant and the remaindermen, is excluded in all
cases, except that of a widow's dower. "In the absence
of statutory enactment, a life tenant is entitled only to
the annual income from his interest, and not to its present
value."—*Ex parte Winstead*, 92 N. C. 703; 17 Amer. &
Eng. Encyc. of Law, 807; Freeman on Coten. & Part.,
§ 549.

4. No class of life tenants are more favored in law
than that of doweress, and yet prior to the enactment of
the present statute allowing a sum in gross to be paid in
lieu of dower, all the courts steadily refused to set apart
to the widow a sum in gross for her dower interest, un-
less the owners of the estate in reversion consented to it.
*Beavers v. Smith*, 11 Ala. 20; *Martin v. Wharton*, 38 Ala.

642; *Springle v. Shields*, 17 Ala. 298; *Herbert v. Wren*, 7 Cranch 370.

BRICKELL, C. J.—The original bill was filed by the appellee, William Deegan, to obtain a decree of the court of chancery, for the sale of certain real estate situate in the city of Mobile, held by him and one Charles Farley, deceased, as tenants in common, to effect a partition between them. Farley had died, and by his will had devised his undivided half part or interest in the real estate, to the appellant, Annie Kelly, for life, and upon her death, "remainder over in fee, to Right Reverend Jeremiah O'Sullivan, and his successors in the Bishopric of the Diocese of Mobile, in trust for the use and benefit of the Catholic Orphan Asylum in Mobile." The devisees are made parties defendant to the bill, and on a final hearing on pleadings and proof, a sale of the real estate was decreed. The sale was made in pursuance of the decree; the appellee, Deegan, became the purchaser, and paid into court one-half of the purchase-money, $10,500, and one-half of the costs. There were no exceptions to the report of the sale, and it was confirmed. The decree of confirmation contains this paragraph : "It is further ordered and decreed that the register by proper deed convey the lands in said report set forth to the said William Deegan, the purchaser at such sale. Out of the proceeds of such sale now in his hands the register will retain the costs of this suit. The balance he will pay over to Annie Kelly on her giving bond with two good and sufficient sureties in the sum of such balance, to be approved by the register, payable to the Right Reverend Jeremiah O'Sullivan, and his successors in the bishopric of the diocese of Mobile, in trust, for the use and benefit of the Catholic Orphan Asylum in the city of Mobile, on the death of the said Annie Kelly. The said Annie Kelly shall have twenty days to make such bond. On her failure to do so, in such time, the register will lend the same out on good real estate as security so as to net as nearly as possible eight per cent. per annum payable annually. The register will report his proceedings under this decree to the next term of this court." Thereafter, the appellant filed her petition, alleging that she was entitled to have severed, and set apart to her absolutely, the value of the life estate, of and from the proceeds of

[Kelly v. Deegan.]

the sale of the real estate, and praying that the value of the life estate be ascertained and decreed to her. On a hearing, the petition was dismissed, and from the decree of dismissal and from the decree of confirmation of the sale, the appeal purports to be taken.

The two distinct decrees—the decree confirming the sale of the real estate, and the subsequent decree of dismissal of the petition of the appellant—cannot be joined and by a single appeal introduced into this court for revision. Either decree is final, and will support an appeal; but the parties to the one, would not be proper parties to the other. Deegan, the party obtaining the decree of sale and the purchaser, would be an indispensable party to the appeal from the decree of confirmation; but would not be a proper party to the appeal from the decree of dismissal of the petition, for he is not a party to the petition, and has no right or interest involved or affected by the decree. There has been no objection taken to the appeal; if an objection had been made, as matter of right, the certificate of appeal was amendable by the appellant, so as to present either decree, as its subject-matter, for revision. The necessities of the case require an early decision of the question presented by the petition of the appellant, and we will proceed to its determination, without regard to the irregularity of the appeal.

While a court of equity had jurisdiction, concurrent with courts of law, to decree the partition of lands held by coparceners, joint tenants, and tenants in common, it was without jurisdiction to decree a sale of the lands, if the tenants, or either of them, were adults, and not consenting.—*Deloney v. Walker*, 9 Port. 497. The statute, (Code, § 3262), now confers the jurisdiction, concurrent with that of the court of probate, "to divide or partition, or to sell for partition," whether the tenants are adults or infants. The essential, controlling element of the jurisdiction is, that the lands "cannot be equitably divided or partitioned" among the tenants.—Code, § 3253. When this fact exists, a sale at the instance of either tenant is matter of right, as actual partition at common law was matter of right, without inquiring whether it is of benefit or injury to the other tenants. Freeman on Cotenancy & Partition, § 539. The decree of sale is obtained only by an adversary judicial pro-

ceeding, and the sale is compulsory. It works a conversion of the lands into money, but it is not destructive of, and works no change in, the relations and rights of the parties; the money stands in the place of the lands, and is divided as the lands would have been divided, if of them there had been actual partition. In *Chaney v. Chaney*, 38 Ala. 35, there had been a sale of lands under a decree of the court of probate, for the purpose of effecting an equitable division among heirs, the widow of a deceased heir being dowable of his undivided part or share of the lands. It was held, the proceeds of sale stood in lieu of the lands, the right of the widow as dowress was not extinguished, and so much of the proceeds of sale as corresponded to her dower interest must be paid to her, on her giving bond and security for the protection of the reversioners. The principle is general, that when lands are sold under a decree of the court in the course of an administration of an estate, the money realized by the sale, is a substitute for the land, and when the purposes of the sale are accomplished, if there be a residue, it passes to whoever was entitled to the land, and they take according to their rights and interests in the land.—*Williamson v. Mason*, 23 Ala. 488.

The sale and division of the proceeds of sale, dissolved the tenancy in common existing between Deegan and the devisees of Farley, as a partition of the lands between them would have dissolved it. But it worked no change in the relation of the devisees, nor in the nature or character of the estate devised to them. The share of the proceeds of sale allotted to them is the substitute for their share and interest in the land, passed to them as land, impressed with the same title by which the land was impressed. There could be as between them, no partition or division of these proceeds, as there could not have been, if there had been an actual partition of the land. The indispensable element of every compulsory partition, is a *cotenancy*. Whatever other relation may exist, if this relation does not exist, there is no right to partition.—Freeman on Cotenancy & Partition, § 431. As between the tenant of the particular estate, whether the estate be for years or for life, and the remainderman or reversioner, there is no tenancy in common, and partition between them cannot be compelled. *Nichols v. Nichols*, 28 Vt. 228; s. c. 67 Am. Dec. 699;

*Savage v. Savage,* 19 Oregon, 112; s. c. 20 Am. St. Rep. 795. The particular estate, and the remainder or reversion, are carved out of, and are parts of the same entire inheritance. They are distinct parts, and as it is expressed by Ch. Kent, "to be enjoyed partitively and in succession."—4 Kent, 199.

Voluntarily, the tenant of the particular estate and the remainderman or reversioner may make sale of the lands, and in the absence of any special agreement between them, a court of equity will compel an apportionment of the purchase-money according to their respective interests. This is the doctrine, and the extent of the doctrine asserted in the authorities referred to by the counsel for the appellant.—*Foster v. Hilliard,* 1 Story 73; *Thompson v. Thompson,* 107 Ala. 163. They lend no countenance to the proposition, which seems to underlie the argument in support of the petition, that a tenant of a particular estate may compel the remainderman or reversioner to a partition or division, by which a qualified, or limited, is converted into an absolute interest, to his prejudice and in destruction of the intention of the donor. The donor intended that on the expiration of the life estate, the entire fee, and no lesser interest should pass to the remainderman, and this intention it is the duty of the courts to preserve and effectuate and not to defeat.

The tenant for life is entitled to the use of the money derived from the compulsory sale on partition with the cotenant of the testator, as she would have been entitled to the use and enjoyment of the land, if on an actual partition land had been allotted. This is the extent of her equity and right, but while awarding it to her, the rights of the remainderman must be protected and preserved. Upon the rule settled in *Mason v. Pate,* 34 Ala. 379; *Chaney v. Chaney,* 38 Ala. 35, she should be permitted to receive the money upon the execution of a proper bond payable to the remainderman, with at least two good and sufficient sureties, and with condition that on her death, the money shall be restored to the remainderman, and with the further condition, that if at any time the court may deem a new or additional bond, or further security necessary, such bond or security will be given on the order of the court, or if not given, the money will be restored as the court may order. If the

bond be not given, in such reasonable time as the court may prescribe, the court should order the money loaned out by the register, the interest collected annually, and after deducting the taxes and necessary costs, paid to the life tenant. The order the court has made in this respect is not in strict conformity to this view, and should be corrected.

The decree dismissing the petition of the appellant must be affirmed.