# Shepard *v.* Mount Vernon Lumber Company.

## *Partition.*

(Decided May 13, 1915.   68 South. 880.)

1. *Partition; Right to; Co-tenancy; Joint Interest.*—Sections 5302, et seq., as controlled by section 5231, Code 1907, is a substitute for partition in kind, the proceeds of the   sale taking the place of the land, and the respective rights of the owners thereto being divided in proportion to the undivided interest of each in the land, and hence, the lumber company which took a conveyance to standing timber, and undertook to remove it from the land within the five years limited to that purpose, could not maintain a bill for the sale of the land, including the timber, as it had no co-tenancy ; a co-tenancy being a tenancy by several distinct titles, but unity of possession, or any joint ownership or common interest; the conveyance of timber making a close distinct from the title to the soil retained by the grantor.

2. *Logs and Logging; Standing Timber; Title.*—Under a conveyance of standing timber with an undertaking to remove it from the land within a specified time, the grantor retained title to the soil, and the purchaser acquired title to the standing timber with right of removal within the time specified.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Bill by the Mount Vernon Lumber Company against Kate T. Shepard, for partition of land and timber there-

on, and for a division. From a decree overruling demurrers to the bill, respondent appeals. Reversed and rendered.

GREGORY L. & H. T. SMITH, and W. G. CAFFEY, for appellant.

ERWIN & McALEER, for appellee.

McCLELLAN, J.—The appellee has persistently sought the right it conceives to be its due under a contract whereby it purchased and took the title to certain standing timber on certain lands. A full statement of the conveyance and the cause may be found in the report of this appellee's appeal in 180 Ala. 148, 60 South. 825. The appellee took conveyance and title to described standing timber, and engaged to remove it from the land within five years from the 19th day of April 1901. On the appeal of the cause just mentioned, wherein the lumber company sought to have its title to the standing timber made available and the appropriation of its timber facilitated, notwithstanding the five-year period in which the company had engaged to remove the timber had expired. It was ruled (180 Ala. 148, 60 South. 825) that the bill was without equity, for that it sought to invoke the court's jurisdiction to the end that a trespass upon the land of the grantors in the conveyance to the company might be sanctioned, authorized, and enforced. The lumber company then brought an action of ejectment to recover the standing timber described in its conveyance. It was held on appeal (190 Ala. 574, 67 South. 286, 687) that the company could not prevail; and so for the reason on which the previous appeal (180 Ala. 148, 60 South. 825) was rested, viz., that, though holding the title to the timber

the possession of which was sought to be recovered in the ejectment suit, to issue judicial process to consummate that possession would be to aid in and to effectuate a trespass by the company. The judgment against the company in the ejectment suit was hence affirmed.

(1) Now, the lumber company has filed a bill to have the land sold (including, of course, the timber), on the ground that the property cannot be equitably divided without a sale, and invoking the court to ascertain, appraise, and apportion the respective values of the timber, to which the company has titles, and the land.

Artcile 1 of chapter 121 of the Code (section 5203 et seq.) affords the positive law governing partition and sales for division of lands held by "joint owners or tenants in common. Code, § 5231, provides: "The chancery court shall have jurisdiction to divide or partition, or sell for partition, any property, real or personal, held by joint owners or tenants in common, whether the defendant denies the title of the complainant or sets up adverse possession or not."

The statutory process whereby lands may be sold by the courts of chancery for division of the proceeds among the joint owners or tenants in common is a substitute for partition in kind: the proceeds of the sale taking the place of the land and the respective rights of the joint owners or tenants in common to the money being apportioned in proportion to the undivided interest of each in the land.—*Kelly v. Deegan,* 111 Ala. 152, 156, 157, 20 South. 378, 379, 380. In this case it was said "While a court of equity had jurisdiction, concurrent with courts of law, to decree the partition of lands held by copartners, joint tenants, and tenants in common, it was without jurisdiction to decree a sale of the lands, if the tenants, or either of them, were adults, and not consenting.—*Deleney v. Walker,* 9 Port.

497. The statute (Code 1886, § 3262) now confers the jurisdiction, concurrent with that of the court of probate, 'to divide or partition, or to sell for partition,' whether the tenants are adults or infants. The essential, controlling element of the jurisdiction is that the lands 'cannot be equitably divided or partitioned' among the tenants.—Code 1886, § 3253. When this fact exists, a sale at the instance of either tenant is matter of right, as actual partition at common law was matter of right, without inquiring whether it is of benefit or injury to the other tenants.—Freeman on Cotenancy and Partition, § 539. The decree of sale is obtained only by an adversary judicial proceeding, and the sale is compulsory. It works a conversion of the lands into money, but it is not destructive of, and works no change in, the relations and rights of the parties; the money stands in the place of the lands, and is divided as the lands would have been divided if of them there had been actual partition."

According to the statutes, a sale of land for division cannot be had unless the land cannot be equitably partitioned among the joint owners or tenants in common thereof. And in further exposition of the subject it was said in *Kelly v. Deegan, supra*: "The indispensable element of every compulsory partition is a cotenancy. Whatever other relation may exist, if this relation does not exist, there is no right to partition."

It will hardly amount to addition to this statement to say that a cotenancy is an indispensable element of every compulsory sale for division under our statutes; and that, if there is no cotenancy, there is no right to a sale for division. Expressive of the same fundamental principle, it was pronounced in *Brown v. Feagin,* 174 Ala. 438, 443, 444, 57 South. 20, 22: "The right of partition, or sale for distribution, is a right which from

its very nature exists only in favor of and against tenants in common, and the equity of the bill filed for either purpose is founded on the community of title or interest in the several parties complainant and defendant."

In treatment of a bill wherein partition was sought, this court pertinently said, in *Berry v. T. C. I. & R. R. Co.*, 134 Ala. 622, 33 South. 9: "Indeed, it is required of complainant that it should show a clear title *to an undivided interest in the lands sought to be partitioned.*" (Italics supplied.)

The proposition, under like circumstances, was thus emphatically stated in *Russell v. Beasley*, 72 Ala. 190: "It is required of the complainants, however, that they should show a clear title to an undivided interest in the lands sought to be partitioned."

The cause in that instance was disposed of upon the ground that the evidence did not "show any estate in common between the complainants and the defendant in the suit, either by way of a joint tenancy, or a tenancy in common." And it was also therein pronounced that: "It avails nothing to prove title to a distinct portion of the land proposed to be partitioned, for the essence of the estate in common, necessary to be here shown, is that the tenants should 'own undivided parts, and occupy promiscuously, because neither knows his own severalty.'"

Other of our decisions, concluding to the same effect, might be noted.

In *Thompson v. Mawhinney*, 17 Ala. 362, 368, (52 Am. Dec. 176), it was said: "Tenants in common are such as hold by several distinct titles, but by unity of possession, because none knoweth his own severalty, therefore they all occupy promiscuously. * * * Unity of possession therefore is the very essence of a ten-

ancy in common, and without it this tenancy cannot exist."—*Pruitt v. Ellington,* 59 Ala. 454, 458; *Austin v. Bean,* 101 Ala. 141, 16 South. 41.

Where the owner of land conveys to another the title to mineral in situ or to standing timber (both realty in the view of the law), the result is to create two closes adjoining but separate (the one the land proper, and the other the mineral or standing timber, conveyed, as the case may be).—*B'ham Fuel Co. v. Boshell,* 190 Ala. 577, 67 South. 403; *Hooper v. Bankhead,* 171 Ala. 626, 54 South. 549.

(2) The application of the established principles, we have but restated, to the status shown by this bill, leads unescapably to the conclusion and to the result that the bill is without equity; that the demurrer was erroneously overruled. The only title or right, in respect of the land described in the bill, claimed for the lumber company, is the standing timber to which, under our decisions that have long since established a rule of property in this state, the company has the title. The conveyance to it of the standing timber made a close distinct from that of the soil, the title to which was not conveyed to the lumber company. The severance thus wrought was so effectual in its separation of the estates into which this real estate was susceptible of division that the soil owner was and is without title or right to the timber conveyed, and the grantee of the timber, the lumber company, was and is without title or right in or to the estate in the land not conveyed to it. In such circumstances, there could be no cotenancy, joint ownership, or tenancy in common within the purview of our partition statutes. Under very similar circumstances, the Supreme Court of Mississippi, Chief Justice Smith delivering the opinion, ruled to the like effect in *Forest Mfg. Co. v. Buckley* (Miss.)

66 South. 279. It was therein aptly said: "It seems clear that the parties hereto do not hold the property in question either as joint tenants, tenants in common, or copartners, and therefore they do not come within the terms of the statute. Appellee has parted with all of his title to the trees, and has no further interest therein. Appellant owns no part of the land as such, but simply owns the trees standing thereon, with the incidental right of having them remain on and receive sustenance from the soil until they shall be cut and removed. The situation of the parties hereto is substantially the same as that of persons who own different rooms in the same building, or as that created when the owner of the soil sells the coal or other mineral lying beneath the surface; and it has never been held, so far as we are aware, that parties thus situated are joint tenants or tenants in common."

The Supreme Court of Pennsylvania, in *Dexter v. Lathrop,* 136 Pa. 565, 20 Atl. 545, 548, make a like pronouncement on the question here under consideration, that there was no cotenancy.

There is no unity of possession or of right to possession between a party holding the title to standing timber and a party owning the land, as such, on which the timber rests. In the absence of such unity of possession or right to possession, there can be no cotenancy of land. There is nothing to the contrary in the decision delivered in *Christopher v. Curtis Lumber Co.,* 175 Ala. 484, 57 South. 837. It does not deal with the relation of cotenancy, upon the existence of which the result in this cause depends; but with the matter of notice predicated of possession. To affirm that a grantor is the "quasi bailee" of the grantee in a conveyance of timber standing on the land owned by the grantor, where nothing has been done to render actual the gran-

tee's possession of his purchase, is certainly not the affirmation of a legal status which has in it any element of a relation of cotenancy.

The case of *Harrell v. Mason*, 170 Ala. 282, 54 South. 105, Ann. Cas. 1912 D, 585, is said to be opposed to the conclusion at which we have arrived. Our view is that, while there are expressions in that opinion, by way of dicta, which might afford a premise for a conclusion opposed to that prevailing on this appeal, the doctrine of the decision in *Harrell v. Mason* admits a complete reconciliation with established principles of equity jurisprudence as it is administered in this state. The inapplication of the Harrell-Mason decision to the cause under review lies in the fundamentally differentiating fact that in the cause at bar there was effected in 1901 a full severance in estate of the timber interest from the interest (not coveyed) of the owner in the land as such. In the *Harrell-Mason Case* one only of the co-tenants of the land (the timber interest being then unsevered in estate) conveyed to Harrell only his undivided interest in the timber standing thereon. The conveyance to Harrell was binding and effectual between and upon the parties to that conveyance, but ineffectual to prejudice any of the rights of the grantor's cotenants.—*O'Neal v. Cooper*, 191 Ala. 182, 67 South. 689, 690. Where such a conveyance, by one of the cotenants, is made, a court of equity will treat the grantee as so far subrogated to rights of his grantor (cotenant in fact when he conveys to the grantee) as that, in virtue of the rights of his grantor, he may file a bill in his own name, reciting the facts, to have partition or a sale for division when partition in kind cannot be equitably effected; and on such a bill a court of equity may ascertain and adjust and vindicate the rights of the grantee, complainant, if consistent with,

and not prejudicial to, the rights of the cotenants.—
*O'Neal v. Cooper, supra.* See, also, *Charleston R. R.
Co. v. Leech,* 33 S. C. 175, 11 S. E. 631, 26 Am. St. Rep.
667. But this equity is not predicated of any relation
of cotenancy enjoyed by the grantee, for none he has;
on the contrary, it is the recognition and enforcement,
without prejudice to the rights or interest of the gran-
tor's cotenant, of a right growing out of the cotenant's
conveyance and clothing him with the conveying co-
tenant's right to have partition or a sale for division,
subject to the limitation that the rights of the coten-
ants be not prejudiced thereby. When the Harrell-Ma-
son decision is referred to that right in the conveying
cotenant's grantee (Harrell), it is sound; otherwise, it
would be in conflict with the long-established rule that
cotenancy cannot exist without unity of possession or
of right to possession. The conveyance to Harrell did
not purport to invest him with any interest in the land
as such. He was not a cotenant, in any sense. We need
hardly add that appeal to the rule, that "equity will
not suffer a wrong without a remedy," cannot avail or
apply here to constitute the essential relation or coten-
ancy where that relation does not exist.

The decree is laid in error. It is reversed, and a de-
cree will be here entered sustaining the demurrer and
dismissing the bill.

Reversed and rendered. All the Justices concur in
the conclusion and in the opinion, except as stated in
addenda opinion of Justice MAYFIELD.

MAYFIELD, J.—I fully concur in the conclusion
and in the decree rendered in this case. I also concur
in most all that is said in the opinion of Mr. Justice
MCCLELLAN; but as there seems to be some difference
of opinion, among the Justices, as to the effect of the

decision and opinion in this case, as well as touching the effect of our former decisions on similar questions, I deem it proper to state the reasons, and to limit it to what I concede to be necessary to a decision of this cause.

The question as to what right or title the appellant owner of the land has to the timber sold but not removed within the time limit fixed by the contract, deed, or grant by which the title to the timber passed, is not, as I understand the case, raised on this appeal, and is not decided. Whether the owner of the land is bound to let the timber sold remain standing on her land indefinitely, or whether she can remove it for the purpose of cultivating and improving her land, and, if she did remove it after the time limit had expired, to what extent, if any, she would be liable to the owner of the timber, appellee here, as I read the record, are questions likewise not raised or decided.

Whatever might be the relative rights of the parties to the land and the timber, they are not tenants in common, as the opinion points out, and the complainant could not maintain the bill in this case.

While this court has, in previous decisions cited in the opinion of Mr. Justice McClellan, decided that conveyances of timber like the one in question did convey the fee-simple title thereto, and that this did constitute an interest in land, and in the land on which the timber was standing, this court has never decided, and, I apprehend, will never decide, that such a contract, deed, or grant as the one in question passes such an interest in the land as that the grantor, the owner of the land, can never use or cultivate the land so long as the grantee allows the timber to remain standing thereon. If this be the law, then the grantee of the timber, by failing to remove it as he contracted and cov-

enants to do, can wholly deprive the owner of the land for all time to come, of the proper use and enjoyment of his land. He cannot clear nor cultivate it, because to do so would be to remove or destroy the timber. The very consideration, or a part thereof, at least, of this grant, was to have the timber cut and removed within the time limit fixed by the contract, deed, or grant, so that she could the more easily clear and cultivate her land. If, however, she cannot clear her land or remove the timber, should the grantee fail to remove it within the time contracted, or even should the grantee absolutely fail and refuse to remove it at all, then the value of both the land and the timber is absolutely destroyed by the sole fault of the grantee of the timber in breaching his contract to remove. Can or will any court ever say that such would be the legal and practical effect of a contract, deed, or grant like the one in question? I think not. Is there any logic or reason in holding that the parties to a contract like this, whether they be learned lawyers or ignorant laymen, intended to make such a contract, or that the language used was susceptible of such a construction? I think not. Such a construction of the contract, deed, or grant, allows the fault, breach, or wrong of one party to the contract to render the contract wholly useless and of no value to both.

It has been uniformly held by this and all other courts that, after the expiration of the time limit in which the timber shall be removed, the owner of the timber cannot lawfully cut or remove the timber, though it may belong to him, because he contracted or covenanted to remove it within the time specified; but it has never been held, so far as I know, that the owner of the land, after such a breach by the vendee of the timber, could not use, cultivate, or clear his land be-

cause to so do would destroy the timber or trees of the grantee who was solely at fault. To so construe such contract would render them void as against public policy. Would it not be against public policy to allow lands to be thus tied up forever, so that the owner of the land cannot lawfully use his own land, and so that the owner of the timber could not lawfully cut and remove it? We have no case holding that the owner of land, after the expiration of the time in which the grantee has covenanted to remove it, may not remove the timber from his land and cultivate it if he desires. It is expressly intimated in *Zimmerman's Case*, 149 Ala. 380, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58, that he can remove it, but not use it. It is there said: "It may be that the vendor would be entitled to remove the timber after the time limit himself, but not to appropriate it to his own use."

I submit that it would be unreasonable, if not intolerable, to hold that the owner of the land could not remove the timber and use the land, after the vendee of the timber had failed and refused to perform his contract to remove. While, of course, if the contract, deed, or grant does not fix a time limit for the removal of the timber, the law will read into it a reasonable time limit, yet there is a difference, and a material difference, between contracts for the sale of timber and the right to remove, where no time is fixed, and those in which a time limit is fixed. The cases of *Magnetic Ore Co. v. Marbury Lumber Co.*, 104 Ala. 465, 16 South. 632, 2 7L. R. A. 434, 53 Am. St. Rep. 73; *Butterfield v. Guy*, 92 Miss. 361, 46 South. 78, 15 L. R. .A (N. S.) 1123, 131 Am. St. Rep. 540; *Forest Co. v. Buckley* (Miss.) 66 South. 279—illustrate the difference. In those the grant of the right to use the land for the growing of the timber, and the right to remove it, was

without limitations; and the contracts provided, some by implication and some by express provision, that the right to remove should be at the pleasure of the grantee, with a perpetual right of way for railroad purposes. Those cases, of course, are different from cases like the one under consideration, and the one in *Zimmerman's Case,* where it was expressly covenanted that the right should be renewed within a given time. This difference is well pointed out by the Supreme Court of Massachusetts, in the case of *Perkins v. Stockwell,* 131 Mass. 529, 532. It is there said: "Where there is a reservation of wood and timber with the right to remove the same, it is implied that the removal shall be made within a reasonable time.—*Hill v. Hill,* 113 Mass. 103 [18 Am. Rep. 455]. If the reservation had been of wood and timber which was to be permitted to stand and grow indefinitely, it might be argued that it should be allowed to stand and grow so long at least as to make it merchantable; but when a definite time is fixed within which its growth is permitted without payment, and longer only by payment of rent, the plaintiffs could not expect to hold the defendant bound by the reservation, if they delayed their election beyond the year after the expiration of the original term."

The distinction is well pointed out by the Supreme Court of South Carolina in *Wilson Co. v. Alderman & Sons Co.,* 80 S. C. 106, 109, 61 S. E. 217, 218, 128 Am. St. Rep. 865, 867. It is there said: "The deed was an absolute conveyance in fee simple of the trees and timber suitable at that time for milling purposes, and under the authorities of this state, particularly *Knotts v. Hydrick,* 12 Rich. 314, the estate in the trees and timber was a fee-simple estate; the only limitation being that plaintiff's right was restricted to trees suitable for milling purposes in 1893. Plaintiff was not

required to remove said timber within a reasonable time, but could at any time enter upon the land and remove all timber suitable for milling purposes at date of deed."

A copious note to the above case as reported in 128 Am. St. Rep. appearing on page 868 et seq., cites scores of cases pointing out this difference. A few of them are as follows: "If conveyance of timber requires it to be cut and removed within specified time, it must be cut and removed within that time.—*Bryant Lumber Co. v. Crist,* 87 Ark. 434, 112 S. W. 965. A grant to cut trees within a certain time is not executed if the trees are not cut within the time stipulated.—*Noyes v. Gooding,* 104 Me. 453 [72 Atl. 181]. A deed to cut and remove timber within a certain time is binding on the vendee or his assignee.—*Walker v. Johnson,* 116 Ill. App. 145. If a deed requires timber to be removed within a specified time, it must be removed within that time. —*Hollensteiner v. Missouri Lumber Co.,* 37 Mont. 278, 96 Pac. 420. If a time is set within which timber must be removed, it must be cut and removed within that time.—*Hurst v. Taylor,* 32 Ky. Law Rep. 1051, 107 S. W. 743; *St. Louis Cypress Co. v. Thibodaux,* 120 La. 834, 45 South. 742. Or, if there is a deed to trees to be cut and removed within ten years, they must be removed within that time.—*Webber v. Proctor,* 89 Me. 404, 36 Atl. 631. If the grantee agrees to remove trees from the land within two years from the date of the grant and fails to remove them within a reasonable time after the expiration of that period, his right to the timber is forfeited.—*Bell County Land & Coal Co. v. Moss,* 30 Ky. Law Rep 6, 97 S. W. 354."

The case of *Adkins v. Huff,* reported in 58 W. Va. 645, 52 S. E. 773, 3 L. R. A. (N. S.) 649, 6 Ann. Cas. 246, reviews the authorities on the subject, and the re-

port contains a valuable note collecting many cases. The annotator there has to say: "The conclusion reached in *Adkins v. Huff*, that the right of a grantor of land who reserves timber standing thereon, to be removed within a specified time, terminates at the expiration of such time is supported almost unanimously by the cases which pass upon the question."

It is true that there are cases, among them cases of our own court, holding that the trees or timber left standing on the land after the expiration of the time limit for removal are yet the property of the vendee and do not revert to the vendor; but there are, so far as I know, none holding that the grantee still owns an interest in the land upon which the trees are growing, which will prevent the vendor from removing them in order to use or cultivate his land if he desires so to do. If A. should sell B. a home, with a covenant on the part of the latter to remove it, surely A. would not thereby be forever prevented from using the land on which the house was situated. After the failure of a vendee to remove timber, trees, or a house from the land on which they are located, within the time agreed upon, and certainly upon a refusal so to do, the timber, trees, or house cease to be a part of the land and become personalty, as to the respective rights of the owner of the land and the personalty, and such personalty becomes an obstruction to the use of the land, and of course the owner of the land then has the right to remove it from his land, as he would a horse, cattle or even the person of the owner of such personalty, if it was occupying the land in violation of law, and even, as in the case at bar, in violation of express covenants.

I do not think this or any other court has heretofore held, or will ever hold, to the contrary. I concede, as I have before stated, that there is a difference among

the courts as to the construction of contracts like the one in question. This difference was pointed out in our *Zimmerman Case*, 149 Ala. 380, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58; but the difference only goes to the title of the timber, and not to the title or rights to the land after the expiration of the time limit for removal. It is true, as above stated, that this court in *Zimmerman's Case* followed the line of decisions holding that the trees or timber remain the property of the vendee after the expiration of the time limit, and do not revert to the vendor, and that the contract is more than the mere right to take timber during the time, that it is a sale of the trees, with a covenant to remove; but it has never been held that the interest in the land shall extend beyond the time limit fixed in the contract or grant. Both parties are held to the contract, and were so held, even in *Zimmerman's Case* and the line of cases which it follows.

The true rule, and the correct interpretation of such contracts, was stated by the Supreme Court of Wisconsin, which has been followed by most of the leading courts. The logic and reasoning of this court is unanswerable, as is pointed out by the Supreme Court of Michigan in the case of *Macomber v. Detroit, etc., R. Co.*, 108 Mich. 491, 66 N. W. 376, 32 L. R. A. 102, 62 Am. St. Rep. 713. In these cases the question was made acute, by reason of the fact that at the expiration of the time limit some of the trees sold were still standing, and others had been cut but not removed from the land. So the question was presented: Was there any difference as to the rights of the vendor between the trees cut and those not cut; that is, was there a difference as to the rights and title of the contracting parties as to the timber and the land after the expiration of the time limit? And the Michigan court says: "In

*Golden v. Glock,* 57 Wis. 118 [15 N. W. 12], 46 Am.
Rep. 32, a contract similar to that in question was held
to convey title to only such timber as was removed
within the time limited, but considered all such tim-
ber as was manufactured into stave bolts as removed.
In *Hicks v. Smith,* 77 Wis. 146 [46 N. W. 133], the
same doctrine was reaffirmed by the same court. A con-
tract not distinguishable from the one herein involved
was considered, and it was held that, as to trees cut
into logs, the severance from the realty had become com-
plete. The property had become personalty, and its
character so essentially changed by such manufacture
that it was, in effect, removed from the premises, with-
in the meaning of the deed.

"In *Williams v. Flood,* 63 Mich. 493 [30 N. W. 931],
Mr. Justice Campbell, speaking of such contract as the
present, said: 'It is not very important to discuss the
exact nature of plaintiff's rights under the written con-
tract. Whatever they were, they included an absolute
sale of all the timber described, subject only to such
qualifications of the right of removal as the contract
mentions. At most, this condition would only operate
by way of forfeiture. The timber had all been paid for,
and all belonged to the plaintiff, unless lost by forfeit-
ure for non-removal.' The same can be said of the pres-
ent case, and, if we apply the rule that forfeitures are
not favored (*Miller v. Havens,* 51 Mich. 485 [16 N. W.
865]), the rule of the Wisconsin court seems consist-
ent with reason and justice. It is no stretch to treat the
severance of the timber from the soil, and its manu-
facture into logs, as a removal, within the terms of the
provision for forfeiture."

I concede, of course, that this court has not gone
to the full extent of the above holding, as to the title

to the standing trees, but has as to the rights or title of the grantee as to the land.

Our earliest case on the subject under discussion is *Heflin v. Bingham,* 56 Ala. 566, 28 Am. Rep. 776, and that case expressly followed the New Hampshire court, and chiefly based the holding on the case of *Holt v. Stratton Mills,* 54 N. H. 109, 20 Am. Rep. 119. Both of these cases are fully in accord with what I conceive to be the law, as to the rights of the owner of the land, after the expiration of the time limit for removal. In the New Hampshire case it was said: "When the time for the defendant's keeping his trees or other chattels on the plaintiff's land has expired, the defendant cannot keep them there as long as he pleases. He cannot rightfully keep them there after that time. He can wrongfully leave them there after that time, as he can wrongfully do, or wrongfully neglect to do, a great variety of other things. He is liable, as for any tort or breach of contract, to the extent of the legal rule of damages for injuries caused by his wrongful omission to remove them within the time expressly or impliedly fixed. Not only has the plaintiff a remedy by legal process for the injuries which he suffers from the defendant's property being on his land after the time of removal; he also has the 'natural, essential, and inherent' right of 'protecting property.' He can, without legal process protect his property against the wrongful presence and injurious action and effect of the defendant's property. And this right is the right to do whatever, under the circumstances of each case, apparently is reasonably necessary to be done in defense.—*Aldrich v. Wright,* 53 N. H. 398 [16 Am. Rep. 339]. In that case, some authorities are cited showing that it may be reasonably necessary, in the defense of one's own property, to destroy the property of another. If in de-

fense it is reasonably necessary for A. to remove B.'s property from A.'s land, he may remove it. If it is reasonably necessary for him to destroy it, he may destroy it. If it is reasonably necessary for him to sell it, he may sell it. If it is reasonably necessary for him, in defense, to do anything after reasonable notice. * * * If it is reasonably necessary for him to have a lien on the offending property or it proceeds for the expenses of the exercise of his natural right of defense, he has a lien. When B. is liable for the damage caused to A. by his property wrongfully remaining on A.'s land, he must also be liable for the reasonable expense to which his fault puts A. in ridding his land of the incumbrance. And, if indemnity by lien is a part of the reasonable necessity of A.'s defense, it is a part of his natural right of defense. His remedy by the exercise of his natural right of defense is as broad as the reasonable necessity of the case. That right is a plenary one, whether the thing against which it may be exercised is wrongfully allowed to remain, or is wrongfully put on his land, by B. He may resist a wrongful occupation of his land, as well as a wrongful invasion of it. A wrongful occupation is a wrongful invasion of his right of property."

I submit that there are no decisions contrary to the above; that it is fully in accord with natural and moral law, as well as with municipal: and to hold otherwise would be contrary to all precedents. While there is a conflict among the authorities as to whether timber belongs to the vendor or to the vendee after the expiration of the time limit for removing, there is no conflict or dissent to the proposition that the vendee has no title, interest, claim, or demand as to the land on which the trees are standing. While growing trees and timber are considered realty, and not personalty, yet

when they are severed from the land they become chattels, and a conveyance of them, by a legal fiction, operates as a severance, so far as the rights of the parties to the conveyance are concerned. In legal effect, it is just as if the timber had been severed by the axe. As has been said, the severance in law may be made with the pen as well as with the axe.