# Thorington v. Thorington.

111 237|
111 330|

### *Bill of Review.*

.1. *Remainder to class on happening of uncertain event.*—A devise of property to testator's widow during widowhood, to be divided, on her marriage, among herself and the survivor or survivors of three named children, with a power of appointment in her, by will, in case of her death unmarried, to the survivor or survivors of said children, in such proportions as she might deem proper. and in the event of her death, without exercising the power, the estate *to go to the survivor or survivors of said children*, creates a vested remainder in said survivor or survivors, subject to be divested, as to any one of them, by his death before the falling in of the preceding estate of the widow, and as to all of them by the exercise in the prescribed manner of the power of appointment conferred upon the widow by the will; and at the death of the widow unmarried and intestate as to such property, those only of the three children then surviving take the estate.

2. *Death of widow intestate in such case; meaning of; power of; appointment.*—In such case, the limitation over of the remainder upon the death of the widow *"intestate,"* means, in the connection used, · her death without exercising the power of appointment.

. 3. *Bill of review for error apparent; new defense to original suit, existing at rendition of original decree, not allowed.*—Matter of defense existing at and before rendition of decree sought to be reviewed and available in defense of that suit, can not be introduced into a bill of review for error apparent, when not set up in the original suit.

APPEAL from the Montgomery City Court.

Tried before the Hon. THOS. M. ARRINGTON.

The bill in this case was filed by the appellants against the appellees to review a decree ordering the foreclosure of the mortgage. The facts of the case are set forth at length in the opinion. The appeal is prosecuted by the complainants from a decree sustaining a motion to dismiss the bill for the want of equity, and this decree is here assigned as error.

WILLIAM A. GUNTER, for appellant.—1. It is a general proposition that a life tenant must at least keep down the interest on incumbrances against his estate. It be-

ing regarded as of the highest injustice for a life tenant to receive current rents during his life, and force the remainderman to pay current interest on incumbrances on the estate of the same period. 1 Story's Eq. Jur., §§ 486-7-8; 3 Pom. Eq. Jur., § 1223; 1 Powell on Mortgages, (Rand's Ed.) 322, note M.; *Ohmer v. Boyer,* 89 Ala. 282; Tiedeman on Real Prop., § 66; 1 Wash. on Real Prop., 110.

2. If the testator wished the life tenant to have the entire estate he would have said so in direct terms, and would not have given the remainder, after her death, to the children. If the life tenant had not bought the outstanding mortgage, as requested to do by the will, it is plain she would have been obliged to discharge the interest on the debt, no matter how long the creditor might have postponed the collection. Then how can her purchase of the debt enable her to avoid the plain duty of paying her portion of the incumbrance.—*Ohmer v. Boyer,* 89 Ala. 282; *Whitney v. Salter,* 30 N. W. Rep. 755. She can only succeed to the right of the party selling to her, which is to collect the debt and interest. But her duty to pay the interest remains notwithstanding the purchase, since it arose from the acceptance of the life estate and wholly independent of the purchase of the imcumbrance.—*Ohmer v. Boyer,* 89 Ala. 273-282.

3. The bill in the case sought to be reviewed shows that there was only $5,123.70 due on the debt when the life tenant bought it in 1871, and yet it was enforced in 1886, for over $11,000. No possible contingency could enlarge the debt one dollar after the purchase, since it was the business of the complainant to pay the interest, at least. Here, then, is the plain error, on the face of the record, of decreeing the property to be sold for a debt which under no contingency could exceed $5,123.70, but which, by the allowance of interest was enlarged to $11,122.81. The error appears on the face of the technical record which may be looked at on bills of review. It is shown in the bill, the decree, and the report of the register.—*McDougald v. Dougherty,* 39 Ala. 409; *Smyth v. Fitzsimmons,* 97 Ala. 458.

4. The right of redemption is one to be favored, and the doctrine of judicial confiscation is entirely unknown to the theory of law. But the right of redemption is denied and his property is practically confiscated when a

[Thorington v. Thorington.]

debtor is required to do more than pay his own debt as a condition of redemption.— *Chicago &c. v. Fosdick*, 106 U. S. 47.

5.　It is conceded that if Mary L. Thorington was still the owner of the property the reversal of the decree would *ipso facto* vacate the purchases made by her thereunder. The rule being that, when a party to the decree purchases under an erroneous judgment in his own favor, he acquires a defeasible title only, which fails upon a subsequent reversal of such judgment or decree. *Marks v. Cowles*, 61 Ala. 299 ; *Bank v. Bank*, 6 Pet. 17. Mary L. Thorington claimed through and under the foreclosure proceedings, they constituted the basis of her title, and there is no principle more firmly established "than that a purchaser has notice of everything appearing clearly on the face of the deeds or instrument which constitute his title, forming an integral part of it. The law conclusively imputes the notice, and neither averment nor proof to the contrary can be heard.—*Marks v. Cowles*, 61 Ala. 307 ; *Shorter v. Frazer*, 64 Ala. 74.

6.　The complainants have an interest as devisees, and there is an averment of notice thereof to the purchasers and mortgagees. They were parties to the bill of foreclosure, and all their interest in the property was sold under the decree. Certainly, therefore, they may assign error on appeal or review for the protection of any interest they may have which was involved in said suit.

7.　The agreement simply shows that the complainant undoubtedly and in any event, had an interest which was sold and is now enjoyed by the mortgagees and purchasers under the sale, and it is a novel idea to insist that there are any conditions to the right to assign errors on review, except that they must appear on the face of the record and just be urged within the period of the limitation applicable to the case. The practice in review and on appeal is entirely analogous.—*McDougald v. Dougherty*, 39 Ala. 424 ; *Smyth v. Fitzsimmons*, 97 Ala. 458.

WILLIAM S. THORINGTON ; MARKS & SAYRE ; GRAHAM & STEINER AND LESTER C. SMITH, *contra*.—The complainants have no standing in court. They are the children of Robert D. Thorington and he, as the bill

shows, died before Mary L. Thornington, the donee of the power,which power was to be executed by will only. In such cases, the rule is that "inasmuch as the power is only to be exercised by will, and therefore can only be exercised in favor of those children who shall be living at the wife's (donee of the power) death, those only who survived the wife should take in default of appointment." This is clearly brought out in the case of *Lambert v. Thwaites*, L. R, 2 Eq. Cases 150 ; 2 Lewin on Trusts, pp. 840 841. In addition to the fact that the power in this case is to be exercised by the donee of the power by will, only, and its exercise thereby limited to those who survive the donee of the power, the same result follows in this case from the language of the power itself.—2 Jar. on Wills, (6th Amer. ed.) , pp. 632, 645 ; *Slack & Page v. Bird*, 23 N. J. Eq.(8 Green), 238.

2. The 6th item does not create a limitation over of the property devised to her by the will, or of the principal or corpus of the estate devised to her, but the property of which she should die possessed. The property of which she should die possessed, can only mean the property undisposed of by her at her death.—*McRee v. Means*, 34 Ala. 370 ; *Jackson v. Bull*, 10 Johns. (N. Y.) 19 ; *Jackson v. Robins*, 16 Johns. 583 ; *Strong v. Beroujon*, 18 Ala. 168.

3. Appel'ants have no interest in the property under the will of Jack Thorington, because the property was left after death of Mrs. Thorington, in case she did not exercise the power of appointment by her will, which she failed to do, to Robert, Jack and William, or the survivor or survivors of them. The word survivor related to the death of Mrs. Thorington, and only those surviving her took.—3 Jar. Wills, 584 ; *Mullarky v. Sullivan*, 136 N. Y. 227 ; *Slack v. Bird*, 23 N. J. Eq. 238 ; *VanTilburgh v. Hillinshead*, 14 N. J. Eq. 32 ; *Dutton v. Pugh*, 45 N. J. Eq. 426 ; *Olney v. Hull*, 21 Pick. 311 ; *Denny v. Kettell*, 135 Mass. 138. Even had the will of Jack Thorington omitted the words survivor or survivors, a contingent remainder only would have been created in Robert, Jack and William S. and only those who survived the widow would have taken, because the estate to them was given only in event, or on the contingency that Mrs. Thorington should marry again, or should die without executing the power conferred upon

her by the will, both events being uncertain.—*Phinizy v. Foster*, 90 Ala. 262. The will naming children, its terms cannot be extended so as to embrace grandchildren of testator.—*Phinizy v. Foster, supra; Con. Life Ins. Co. v. Webb*, 54 Ala. 688; *McGuire v. Westmoreland*, 36 Ala. 594.

4. Should the court hold that appellants have an interest in the property involved, we still insist that the present bill shows no error that can be corrected by bill of review. The error complained of is that the chancellor found a greater sum due Mrs Thorington than was in fact due, because she was not charged with rents of the property, and as argued, that she was allowed interest on her debt. Our decisions settle the fact that on bill of review erroneous deductions from the evidence can not be corrected. As said in *Tankersly v. Pettis*, 61 Ala. 354, it is necessary to "make it distinctly and satisfactorily appear, that the court, in the decree reviewed, committed an error of law, made an erroneous application of the law to the facts found or mistook the name or thing for another name or thing." And in *Ashford v. Patton*, 70 Ala. 479, it is said: "An error in the admission of evidence, or basing a decree upon inadmissible evidence, or error in rendering a decree contrary to the evidence, must be corrected by appeal; neither constitutes error apparent for which a bill of review can be maintained.—*McCall v. McCurdy*, 106 U. S. 532.

HEAD, J.—Jack Thorington died, in 1871, leaving his last will, as follows:

Item First. "I desire all my debts to be paid as soon as may be reasonably done."

Item Second. "I own" a policy in the Ætna Insurance Co. of Hartford for $10,000, also in the Equitable for same amount, both of which I intend to keep alive,"and both of which are for the benefit of my wife, Mary L., and are payable to her at my decease."

Item Third. "I give and bequeath unto my dearly beloved wife, Mary L., during her widowhood, all of my entire estate, real and personal, which I now have or may have, or be entitled to at the time of my decease."

Item Fourth. "It is my will and desire that at the time of my decease if I should not have sufficient means

[Thorington v. Thorington.]

to pay within a reasonable time all my present indebt-
edness now secured by a mortgage on real estate, that
my wife should pay the same out of any funds received
from the policies of life insurance described in item
second, upon the party holding or owning said indebt-
edness and mortgage transferring and assigning the
same to her as her individual property and as for her
sole and separate use and benefit, clear of all other
claims and demands whatsoever."

Item Fifth. ''If the issues, increase, rents and prof-
its of my estate shall exceed the expenditures of my wife,
it is my desire, the surplus shall become and form a part
of the principal of my estate."

. Item Sixth. ''If my wife shall not marry again, it is
my will and desire, she shall have the power and author-
ity, and she is hereby invested therewith, to dispose of
all the estate and property she may have or die possessed
of, or, be entitled to, by her will to our beloved children,
Robert D., Jack and William S., and in such shares and
proportions to them, or the survivors, and under such
safeguards in trust, or otherwise as under the circum-
stances then existing she may deem best and wise and
just for them, and in the event of her dying intestate,
the said estate and property to be distributed to our said
three children equitably and share alike, or to the sur-
vivors or survivor of them."

Item Seventh. ''It is my w ll and desire that should
my wife marry again, that in that event there shall be
an immediate division of all my estate into four equita-
ble parts or shares, that my wife shall receive one of
said parts or shares and that the three other parts or
shares shall immediately be paid over to my said three
children, Robert D., Jack and William S., or the survi-
vors or survivor of said children.

Item Eighth. ''I hereby ordain my beloved wife, Mary
L. Thorington, and my son, William S. Thorington, my
executrix and executor of this my last will and testa-
ment, and hereby, by express provision to that effect, ex-
empt them from giving security on their bond."

. The widow, Mary L., and the son, William S., quali-
fied as executrix and executor, but as shown by the
foreclosure bill, hereinafter referred to, the widow never
acted as such, but she devolved all executorial duties on
her co-executor. She died in 1890. The son of the tes-

tator, Robert D., mentioned in the will, died, intestate, in May, 1882, leaving a widow, Sallie G., and three children.

On November 6, 1871, the said widow, Mary L., as requested by the testator in the fourth item of his will, purchased, with her insurance money, the mortgage therein referred to, paying therefor $5,123.70, being the amount due thereon, and had the same assigned to her by the mortgagee; and in December, 1885, she filed a bill in equity to foreclose the same, making the said William S., Jack, and the three infant children of Robert D., parties defendant. That bill, averring the necessary introductory facts, further averred that oratrix had been in possession of the property described in the mortgage as life tenant, under said will, and that the accruing rents were secured to her by the will, and enjoyed by her as such life tenant, and not as mortgagee; that nothing had been paid on the mortgage, but that the full sum so paid by her therefor, with interest thereon, was still due and unpaid. The defendants answered the bill—the infants answering by their guardians *ad litem*; but none of the answers appear in the abstract of the present record. The cause went regularly to submission for final decree on the pleadings and evidence, as noted by the register, and on December 11, 1885, a final decree was enrolled, granting complainant the relief prayed. The court, deeming a reference unnecessary to ascertain it, itself ascertained, from the evidence, and so decreed, that the amount due complainant on the mortgage debt, was the sum of $10,896.40. A decree of sale, in foreclosure of the mortgage, was regularly rendered, at which complainant was authorized to bid and purchase; and the register was required, upon compliance with the terms of the sale, by the purchaser, to execute to him a deed of conveyance vesting in him all the right, title, claim and interest, both at law and in equity, in possession, remainder or reversion, which each and all of the parties to the suit had in and to the property, or any part thereof. It was further ordered, that from the proceeds of the sale, the register pay the expenses thereof, and the costs of the suit, and pay to the complainant the sum ascertained to be due her, On January 11, 1886, the decree was regularly executed by the register, and the complainant became the pur-

chaser, at the price of $11,122.81; and having entered on the margin of the minute entry of the decree, a credit, in the sum of $10,969.04, and paid to the register $153.77, covering the expenses and costs, she received the deed of conveyance, in conformity to the decree. These facts were all duly reported by the register, and on January 12, 1886, his report was confirmed, without exception. Subsequently, and prior to the filing of the present bill, the said Mary L. Thorington disposed of all the lands, so purchased, selling parts of it absolutely, to certain persons, conveying to them, in fee, and receiving the purchase money, and executing sundry mortgages to certain parties, for borrowed money, upon the residue; and some of the mortgagees were proceeding to foreclose.

The said Mary L. Thorington died without marrying again. She left a will, but so far as appears, made no disposition therein, of any property acquired from the estate of her deceased husband.

On December 24, 1894, the said three children of Robert D. Thorington, the eldest having attained majority on February 17, 1892, and the youngest being still an infant, filed the present bill, in equity, against said Jack and William S. Thorington, the latter individually, and as executor of the elder Jack Thorington, and of Marry L. Thorington, and the said grantees and mortagees of said Mary L., to review and reverse the said foreclosure decree, for alleged error apparent upon the record; assigning, as errors therein, that said Mary L., while executrix and life tenant of the mortgaged property, bought the mortgage for $5,123.70, and held it for more than ten years, and was not charged, as mortgagee in possession, nor as executrix, with the rents and use of said real estate, which the assignment of error states, though not shown by the record sought to be reviewed, were worth $2,000 per annum; that she was not required to pay any portion of the mortgage debt; that she was not required to account for the assets of said estate, and that the decree was made in her favor for the sale of the mortgaged property, for more than the principal of the debt, at the time of her purchase.

The bill of review avers that said Mary L. converted to her own use all the personal estate of her deceased husband, and all the rents of the realty from his death,

without making any settlement of her accounts as executrix (this bill averring that she, and said Willian S. acted as executors), and that there has been no settlement.

It further avers (and makes the writing an exhibit) that, on the 22nd day of August, 1881, the three sons of the testator, viz., Robert D., William S., and Jack Thorington, entered into a written agreement, wherein they set forth, *in haec verba*, the sixth and seventh items of said will of their father, and recited, that from declarations made by their father, in conversations both before and after the making of the will, and also from facts within their knowledge, they were satisfied that said sixth and seventh items, from inadvertence, do not correctly express the will of the father, and that he did not use the words "survivors and survivor," as they appear in said items, in their legal, technical significance, and that he did not intend by the use of said words to exclude from sharing in his estate, the child or children of such of them as might die before the others, leaving children or a child, and there being no doubt in their minds that where the words, "survivors" and "survivor," occur in said will, their father referred to, and meant thereby, the children or child of whichsoever of them should die before the other leaving children or child. Wherefore, in order to remedy said inadvertence, and to effectuate the real will of the deceased father as it was understood and known by them, it was covenanted and agreed, by and between them, that the said will may be taken and construed, so that, if either the said Robert D., Jack or Willlam S., should die, leaving a child or children, that, and in that event, such child or children shall take the same share and interest in their father's estate as its or their deceased father would have taken had he lived ; the object and intent of the agreement being to cause said will to have the same legal operation and effect that it would have, if the words, "or the survivors," and the words "or the survivors or survivor of them" in said sixth item, and the words, "or the survivors or survivor of said children," in the seventh item, were not contained in said will. This agreement was nowhere brought to view, or referred to, in the record of said foreclosure suit.

[Thorington v. Thorington.]

The prayer of the bill is for general relief; and, specially, that the decree in the foreclosure suit be reversed and set aside, and the sale thereunder vacated; that a settlement of the accounts of said William S. Thorington and Mary L., as executor and executrix of said Jack Thorington, deceased, be had, under the direction of the court, so far as may be necessary to satisfy and cancel said mortgage debt, and that ' the rents which Mary L. received, or should have received, and the value of the use and occupation of any portion of said estate enjoyed by her, and the value of all personal property of said Jack Thorington left on hand at his death, be charged to said Mary L., and deducted from said debt; and if it appears that said mortgage debt is paid, that the said bill be dismissed. And there is a prayer that the sales and mortgages of said property made by said Mary L. be vacated, and the parties in possession charged with rent, &c.

The respondents demurred to the bill, assigning numerous grounds, and moved to dismiss for want of equity. From a decree sustaining the motion to dismiss, the complainants appeal.

In the effort to sustain the bill, the complainants are met, at the outset, with the proposition, that they are shown to have no interest in the property involved. This question arises upon the construction of the will, in view of the death of Robert D. Thorington prior to the death of Mrs. Thorington, the life tenant, which occurred without an execution by her of the power of appointment conferred upon her by the will.

It has been much discussed whether the estates limited in remainder to the three sons, Robert D., Jack and William S. or their survivor or survivors, vested in them at the death of the testator (all of them being then in life), or were of a contingent character, not vesting until the death of the life tenant, and then only in those surviving. Since the former opinion in this case was filed this question has undergone thorough consideration and review by this court in the case, analogous in principle, of *Smaw v. Young,* 109 Ala. 528, (at the present term, and the rule there laid down, when applied to this case,) determines that the estates vested in the remaindermen, at the death of the testator, but subject to be divested, as to any of them dying before the death of

the tenant of the particular estate ; and, of course, under this will, subject to be changed or controlled by the execution of the power of appointment mentioned. The opinion in *Smaw v. Young*, *supra*, embodies an ample discussion of the whole subject and its repetition here would be superfluous. Under its influence, the estate of Robert D. was divested by his death pending the existence of the particular estate, and the survivors, Jack and William S., were alone entitled at the death of Mrs. Thorington. The complainants, the children of Robert D., upon these considerations, have no interest in the subject matter of this suit.

We do not think a different conclusion in reference to the character of the remainders, whether vested or contingent, or to the persons entitled at the death of Mrs. Thorington, is required by the provision of the will that the *quantum* of the interests taken by the three sons would be diminished from one-third to one-fourth, each, upon the contingency of her marriage. The case, in this respect, is not different in principle from a devise in remainder to those of a class of persons living at the falling in of the particular estate, for instance to the children of a person, when there are children within the description designated, living at the death of the testator, and after born children of the same description. There the remainder vests, at the death of the testator, in the children then in life, subject to open and let in those after born, so as that the *quantum* of interests taken by the children living at the falling in of the particular estate, is not determinable until the happening of the last event, but this uncertainty as to the *quantum* of interests does not affect the character of the remainder, nor the ascertainment of the persons entitled at the death of the particular tenant.

Does the agreement of the three sons, construing the will, &c., introduced into the bill of review, affect the question? We are decidedly of the opinion it does not. We must consider the record, sought to be reviewed, in its condition when before the chancellor, omitting the evidence. We are aware of no precedent, either on appeal, or a bill of review of this particular character, for the introduction into the record of a new element existing at the rendition of the decree, determinative of the rights of the parties litigant, involved in the controversy.

There may be instances where a person becoming interested by assignment of, or in succession to, a party to the record, may, upon showing his interest, be permitted to appeal, or intervene, and assign errors ; or, it may be, bring in a bill of review ; but, in so doing, he must take the record as he finds it.  He cannot upon facts existing when the decree was rendered and for the non-introduction of which into the original cause, no excuse is shown, make a new case.  Nor can an original party do so.  Counsel seem to recognize these indisputable propositions, and undertake to justify the introduction of the agreement, if we understand correctly, as the means of showing complainants' right to assign errors.  Taken for that purpose, it is wholly unnecessary. Complainants were parties to the foreclosure proceedings, and have the right to assign any errors, apparent upon the record, if there were any, prejudicial to them.  Their father having died prior to the foreclosure suit, they had no interest, absolute or contingent, to be prejudiced by the decree.

The motions to dismiss the bill for want of equity were properly sustained.

Affirmed.