103 So.2d 800

Bessie Dandridge BRUGH et al.

v.

Olive W. WHITE et al.

2 Div. 344.

Supreme Court of Alabama.

June 27, 1957.

Rehearing Denied June 19, 1958.

Jones, McEachin & Ormond, Tuscaloosa, for appellants.

Jas. S. Coleman, Jr., Eutaw, and Ira D. Pruitt, Livingston, for appellees.

Alabama, its petition of condemnation of certain real property situated in the City of Eutaw, in Greene County, Alabama, for the purpose of establishing a public park on said land.

On December 30, 1952, the Probate Court of Greene County entered a decree of condemnation of said real property and fixed the amount of damages and compensation for the owners of the said real estate at the sum of $4,000. Said cause was appealed to the Circuit Court of Greene County, and on April 11, 1953, the Circuit Court entered an order of condemnation of said real estate, fixing the amount of damages and compensation for the owners of the said real estate at the sum of $5,500 by which judgment the City of Eutaw acquired title to the real estate in question. After payment of court costs, the net balance due the former owners of the land so condemned was $5,457.50, this net fund being in the hands of the circuit clerk for distribution among the owners thereof, who were formerly the owners of the condemned land.

The land condemned by the City of Eutaw was formerly owned by Ella W. Cameron, deceased, who died in 1941 leaving a last will and testament by which she devised the real estate in question as follows:

"Item Three: I hereby give, bequeath, and devise the real estate owned by me in Sumter County, Alabama, known as the Huff Place, together with the Cameron pasture, a tract of land approximately five acres in area, situated in the Town of Eutaw, on Highway No. 11 to Bessie Dandridge Brugh, during the term of her natural life and after her death to her daughter, Cassie Bethany, for and during the term of her natural life and after her death to the residuary legatees named in item five of this will who are living at that time, in fee simple, share and share alike.

\* \* \* \* \* \*

LIVINGSTON, Chief Justice.

On October 16, 1952, the City of Eutaw filed in the Probate Court of Greene County,

"Item Five: I direct that my Executrix and Executor, hereinafter named shall convert all of the rest and residue of my property, real, personal and mixed, of whatever kind and wherever situate, of which I may die seized and possessed, into cash, giving them full authority to sell said property at either public or private sale, whichever in their judgment will be the most profitable, and I hereby give, bequeath, and devise the proceeds of the sale from said property as follows: One-half to Olive W. White, Nell W. Fallaw, Cameron White and Fanelle Barnes, the other one-half to Sallie W. Martin, Fleta W. Morton, Lila McMahon, Winston McMahon, William O. McMahon, Donald McMahon, Virginia W. Barnes, Winston White, Olive White Baarcke, Addie White and Hubbard White."

This will was duly probated on the 15th day of July, 1941.

The appellants, life tenants of the proceeds of condemnation of the real estate condemned by the City of Eutaw, filed a sworn application in the Circuit Court of Greene County, Alabama, which as last amended, offered to have the value of their interests considered and adjudged together and prayed that the value of both of their life estates be determined and paid to them as provided by Sec. 64(1) of Title 47, Cum. Pocket Part of the 1940 Code. The appellees' answer to the application, as last amended, denied that the appellants were entitled to have the value of their life interests in the fund ascertained and distributed as set forth in the appellants' application, and prayed that the appellants be granted only the use of the fund for life and thereafter that the entire fund be paid and distributed to the appellees who are living at that time. The appellants, separately and severally, demurred to the answer of the appellees.

On August 24, 1954, the cause and the appellants' application as last amended were argued and heard in the Circuit Court of Greene County, and on September 18, 1954, the court rendered its final decree and judgment in this matter. The court held that Sec. 64(1), Title 47, Cum. Pocket Part of the 1940 Code, which was approved on July 9, 1945, did not apply to the situation involved in this case; that said statute is unconstitutional in so far as it attempts to provide a method of distribution of the money involved in this proceeding; that the rights of the parties became fixed before the passage of said statute, and the passage of said statute did not change the status of any of the parties hereto in relation to the property involved herein; and that the surviving remaindermen mentioned in said will had a substantive or vested right in the condemnation award subject only to the right of the life tenants to the income thereof until the death of the last surviving life tenant. Thereupon the appellants appealed and assigned as error this ruling.

First, are the remainder interests created by the will of Ella W. Cameron, deceased, vested or contingent? The words creating the various interests are as follows:

"* * * to Bessie Dandridge Brugh, during the term of her natural life, and after her death to her daughter, Cassie Bethany, for and during the term of her natural life, and after her death to the residuary legatees named in item five of the will who are living at that time * * *."

In Kumpe v. Coons, 63 Ala. 448, at page 452, there was a devise of lands to a married woman for life "and after her death to her children then living," Justice Brickell stated:

"The gift over to the then *living children* of Mrs. Barclay, on the termination of her estate for life, is a vested, as distinguished from a contingent remainder. 'It is,' says Ch. Kent, 'the present *capacity* of taking effect in possession, if the possession were to become vacant, and not the

·certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder.' The death of Mrs. Bar-clay could happen, before the death of any of her children; and if it did, the gift in remainder would immediately vest in possession. 4 Kent, 232. * * * "

Kent's definition was again relied on in Gindrat v. Western Railway of Alabama, 96 Ala. 162, 11 So. 372, 19 L.R.A. ·839, where the words creating the remainder interest were: "said premises shall still be held in trust for her three children, to wit, Abraham Gindrat, Mary Elizabeth Winter, and William B. Gindrat, for and during the term of their natural lives, and at their death the same shall vest in the heirs at law or children of them, * * * that may be living at the time of their deaths." Justice McClellan stated, 96 Ala. at page 170, 11 So. at page 375:

"If Abraham Gindrat had a child *in esse* on July 17, 1845, the remainder to his children at once vested in such child, and thereafter opened and let in after-born children, as they came into being. This, on the familiar principle that the uncertainty which prevents the vesting of a remainder must have reference to the present right of future enjoyment, and not to the enjoyment itself; or, in other words, if, when the final remainder was created, there was a person *in esse* entitled to take in possession immediately, upon the termination of the preceding life estate, the remainder became at once a vested estate in him, however great should be the uncertainty as to whether he would in fact ever come into the possession and enjoyment of the estate; * * * ."

In Smaw v. Young, 109 Ala. 528, 20 So. 370, the court, speaking through Justice McClellan, acknowledged that in Kumpe v. Coons, supra, and Gindrat v. Western Railway, supra, they had been misled by Chan-cellor Kent, in that the definition of a vested remainder relied on in those cases originated in the Revised Statutes of New York and was not a correct statement of the common law. It was stated, 109 Ala. at page 542, 20 So. at page 376:

"It is, therefore, submitted that, in order that a remainder may vest in interest, not only must it be capable of taking effect in possession at any moment the possession may become vacant, but there must also be some certain and determinate person *in esse* and ascertained, who answers the description of the remainderman at some time during the continuance of the particular estate, and not merely at its determination * * * ."

The majority of the court, though realizing that Kent's definition could not be sustained on principle, were unwilling to overrule the Kumpe and Gindrat cases on the ground that they had "established a rule of property in the state which should not now be overturned."

A legislative definition of vested and contingent remainders was incorporated in the Code of 1907, § 3401 (now Title 47, § 140, Code of 1940):

"Remainders are either vested or contingent. A vested remainder is one limited to a certain person at a certain time, or upon the happening of a necessary event. A contingent remainder is one limited to an uncertain person, or upon an event which may or may not happen."

In Lyons v. Bradley, 168 Ala. 505, 53 So. 244, 247, Justice Sayre stated:

"In the Code of 1907 there appeared for the first time a legislative definition of vested and contingent remainders which established as the law of this state the views of McClellan, J., expressed in Smaw v. Young, supra; those views being in consonance with the learning of the common law on the subject * * * ."

For the proposition that the remainder interest of the appellees vested at the death of the testator, the appellees cite the cases of Thorington v. Thorington, 111 Ala. 237, 20 So. 407, 36 L.R.A. 385; Acree v. Dabney, 133 Ala. 437, 32 So. 127; Duncan v. De Yampert, 182 Ala. 528, 62 So. 673; and Braley v. Spragins, 221 Ala. 150, 128 So. 149. Thorington v. Thorington, supra, and Acree v. Dabney, supra, were decided prior to 1907 following the cases adopting Chancellor Kent's definition, and in that regard are no longer the law in this state. In Duncan v. De Yampert, supra [182 Ala. 528, 62 So. 674], the words creating the remainder interest were "but at his death to be equally divided between the heirs of his body, but should he die without leaving a child or children, in that event he shall have the right to dispose of the lands herein devised to him and the heirs of his body in any manner he may see fit." The court held that this created a vested remainder in the children of the life tenant at the death of the testator. Justice Sayre stated, 182 Ala. at page 537, 62 So. at page 676:

"If the will had provided that the interests of testator's grandchildren should vest upon the happening of an uncertain event, as was the case in Phinizy v. Foster, 90 Ala. [262] 264, 7 So. 836, or if—what would have amounted to the same thing—it had provided that those of the definite class, Asberry's children, who should survive a named event should take, as was the case in Smaw v. Young, supra, to which we have referred for a definition of vested remainders, and as was the case in Inge v. Jones, supra [109 Ala. 175, 178, 19 So. 435], a different result would follow. In such case the interest given would have been contingent and not transmissible under the statute of descents. But that is not this case."

This case in no way upholds the appellees' contention that the remainder interest in the present case vested at the death of the testator. Moreover, Duncan v. De Yampert, supra, was governed by the law as it existed prior to the adoption of what is now Sec. 140, Title 47, supra. Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550. Likewise, the case of Braley v. Spragins, supra, does not support the appellees' contention. In that case, there was a devise to the testator's sisters for their lives, and upon the death of either to the survivor, and upon the death of both, the testator's niece was to receive all the property that the sisters had not disposed of during their lifetime. The court held that the remainder interest vested in the niece upon the death of the testator, for there was no condition precedent to its vesting, but the mere possibility that it could be defeated by a subsequent act.

The law favors the early vesting of estates, and unless the intent to postpone the vesting of an estate is clear from the face of the will, this court will construe a remainder as vested rather than contingent. George v. Widemire, 242 Ala. 579, 7 So.2d 269; Wright v. City of Tuscaloosa, 236 Ala. 374, 182 So. 72; McGlathery v. Meeks, 219 Ala. 89, 121 So. 67.

Professor Gray, in the 4th Edition of the Rule Against Perpetuities, in § 108, states:

"Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to, the remainder-man, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested."

See, also, Crawford v. Carlisle, 206 Ala. 379, 89 So. 565.

In George v. Widemire, supra [242 Ala. 579, 7 So.2d 274], this court held that a devise "To my four children or their heirs any * * * property left from my estate at the death of my wife * * * and at her death make a complete settlement with my other children or their heirs," showed a clear intent to create a contingent remainder. It

was stated, 242 Ala. at page 587, 7 So.2d at page 275:

"It would seem equally clear, therefore, that the persons who are to take are such of the testator's children as might be living at the time of the distribution, and the children of such as might have predeceased. The vesting of the estate in interest, as well as in possession, in the children of the testator, depended upon their surviving the day of distribution. In other words, time is of the substance of the gift, and relates to the vesting of the legacies in interest, as well as in possession."

In Wright v. City of Tuscaloosa, supra, this court held that a devise to the "lineal descendants" of the life tenant showed a clear intent that the children of the life tenant have a contingent remainder during the life estate, for until the death of the life tenant his lineal descendants could not be ascertained. A devise to persons "then living" has been held to show a clear intent to create a contingent remainder. See 1 Simes & Smith, Future Interests (2d Ed. 1956), § 153, and cases cited on page 175 in footnote 42. A devise to persons "who may be living, or surviving, at the time" has been held to show a clear intent to create a contingent remainder. See L.R.A., 1917D, 601, and cases cited on page 605 in footnote 16.

In the present case, the appellees have a remainder interest contingent upon their surviving the appellants.

 Owners of property taken by the power of eminent domain must be justly compensated. Alabama Constitution 1901, Sections 23 and 235. Life tenants and remaindermen, whether the remainder interest is contingent or vested, have interests which entitle them to compensation. Denson v. Alabama Polytechnic Institute, 220 Ala. 433, 126 So. 133; Department of Public Works and Buildings v. Porter, 327 Ill. 28, 158 N.E. 366; Callison v. Wabash Ry. Co., 219 Mo.App. 271, 275 S.W. 965; Miller v. City of Asheville, 112 N.C. 759, 16 S.E. 762, 763; Charleston & W. C. Ry. Co. v.

Reynolds, 69 S.C. 481, 48 S.E. 476; 2 Nichols, Eminent Domain, § 5.22 (3d Ed. 1950); 2 A.L.R. 786, 792; Corrigan v. City of Chicago, 144 Ill. 537, 33 N.E. 746, 21 L.R.A. 212, 219.

 Unquestionably it is no defense to condemnation that the lands sought to be condemned are owned by two or more, or that their interests are not the same kind of interest or estate. It is also undeniable that the funds derived from condemnation stand in lieu of the lands condemned and must be fairly apportioned so as to care for and protect all such interests. It is not contemplated that such funds are to remain static or undisposed of in the hands of the court.

In 1 Orgel, Valuation under Eminent Domain (2d Ed. 1953), § 118, p. 510, it is said:

"When property subject to a life estate is condemned, the courts face the problem of applying the total award so as fairly to care for the respective interest of the life tenants and the remaindermen or reversioners, as the case may be. Two alternative methods of securing this object have been adopted. The first method is immediately to allocate the award between the two claimants, basing the apportionment on estimates of the present value of the life estate and of the remainder. The second method is to turn the entire award over to trustees, directing them to apply the income from the fund to the life tenant during the period of his tenancy and to distribute the corpus of the fund to the remainderman when his right would have materialized."

 Sec. 64(1), Title 47, Cum. Pocket Part, Code of Alabama 1940, gives a life tenant or a remainderman a right to demand that the condemnation award be apportioned in a particular manner. It provides:

"Excepting in cases where the dower interest of the widow of a decedent

is sold during process of administration of such decedent's estate, in all cases where lands are sold for division among joint owners or tenants in common and where lands are taken under the power of eminent domain, and one or more persons own a dower or life interest in the whole or in an undivided interest in such lands the court having jurisdiction of the cause in which such lands are sold or taken, as aforesaid, after the proceeds are paid into court, shall, upon the sworn application of any person owning such dower interest or life interest, or any remainder or reversionary interest therein, ascertain the present value of such dower or life estate, and pay to the owner of such dower or life interest in cash the value of such interest, the remainder to be paid to the reversioners or remaindermen."

This statute is mandatory.

The circuit court in which the condemnation was effected has jurisdiction and power to distribute the fund paid into court to the parties entitled thereto, Sec. 26, Title 19, Code of 1940, and in doing so it is required by Sec. 64(1), Title 47, Cum. Pocket Part, Code of 1940, on the sworn application of any person owning a life interest (or any remainderman or reversioner), to ascertain the present value of such life estate, and to pay to the owner of the life interest in cash the value of such interest, the remainder to be paid to the reversioners or remaindermen. This is by virtue of the foregoing act approved July 9, 1945 (Act No. 446, Gen. Acts 1945, p. 684). That act provides machinery for a determination of the issues involved, and also provides for an appeal to this court from the final judgment. Prior to that statute, there was no provision of law for commuting the life interest of one of the parties and paying the present value of it in cash. Without a statute so authorizing, this could not be done except by consent of all parties interested. Chapman v. York, 212 Ala. 540,

103 So. 567; Kelly v. Deegan, 111 Ala. 152, 20 So. 378; Etheredge v. Etheredge, 219 Ala. 660(10), 123 So. 48; Beavers v. Smith, 11 Ala. 20, at page 30; Compton v. Cook, 259 Ala. 256(12), 66 So.2d 176, 102 A.L.R. 973.

It is said in Kelly v. Deegan, supra, and quoted in Chapman v. York, supra [212 Ala. 540, 103 So. 569]: "'The donor intended that on the expiration of the life estate, the entire fee, and no lesser interest should pass to the remainderman, and this intention it is the duty of the courts to preserve and effectuate and not to defeat.'"

We think that a statute enacted subsequent to an event which changes the property rights of the owners would serve to violate this principle protected by due process. But a condemnation proceeding does not change property rights as such; it merely changes lands to money.

In determining whether a statute giving a condemnor the right of entry pending an appeal from a preliminary assessment of damage is constitutional, this court, in Opinion of the Justices, 259 Ala. 524, 67 So. 2d 417, 420, said:

"The very essence of the power of eminent domain is the right of the sovereign or its agents to divest the landowner of his property and to take away from the landowner his vested rights to possess the property. On the other hand, the vested right of the landowner is to demand the payment of adequate compensation and damages. * * *

* * * * * *

"The object of the amendments here involved was to provide means equitable and just to all parties, whereby a person or corporation entitled to exercise the rights of eminent domain could enter into possession of the property condemned and without being compelled to await the delay resulting from litigation in cases of appeal from such

award of commissioners. These statutes affect the mode of putting the award into effect, and, therefore, only affect the remedy. The courts generally hold that remedies are subject to legislative control, and so long as an ample remedy is furnished, the obligation of contracts is not impaired by any change of the remedy. So long as there remains a right to condemn private property, the substantive rights remain the same and changes in matter of procedure, whether by amendment or new acts, do not affect the substantive right, or perhaps more properly speaking, the right given by a substantive law. It has been expressly held that a statute granting the condemnor the right of entry for the first time pending an appeal is remedial only, and that the Constitution does not prohibit such statutes from applying to pending litigation. Texas Midland R. v. Southwestern Telegraph & Telephone Co., 24 Tex.Civ.App. 198, 58 S.W. 152. See also Gulf, C. & S. F. R. Co. v. Southwestern Telegraph & Telephone Co., 25 Tex.Civ.App. 488, 61 S.W. 406; City of Los Angeles v. Oliver, 102 Cal.App. 299, 283 P. 298, and our own case of Grand International Brotherhood of Locomotive Engineers v. Green, 210 Ala. 496, 98 So. 569; City of St. Louis v. Calhoun, 222 Mo. 44, 120 S.W. 1152; Henderson & Nashville R. Co. v. Dickerson, 1856, 17 B.Mon., Ky., 173, 66 Am.Dec. 148."

In the instant case, the will of the testator provided for life estates and remainders. They must so remain except by mutual agreement. But the Act of 1945, supra, we think, does not serve to change the property rights of the various parties, nor their tenure, for reasons which we shall now undertake to explain. The act was passed prior to the condemnation proceeding which converted land into money, but after the death of the testator and the probate of her will. The relation of the parties to the money should be the same as it was to the land before the condemnation. It must not be changed either by legislation (Act of 1945, supra), nor by the court in administering that act. We think it can be administered so as to preserve their respective property rights.

The first step to be pursued at the instance of Mrs. Brugh, whose life estate vested on the death of the testator, is to fix the present value in cash of that life estate. That is not a difficult step. First, ascertain her probable life expectancy; then the present value of the use of money, including its prospective value during her life expectancy; then on those figures compute the present value of Mrs. Brugh's life interest. The result is the amount to be paid to Mrs. Brugh in complete ownership. The statute, supra, provides that the balance shall be paid to the remaindermen or reversioners. That means as their interest and rights appear.

"Any number of estates, each less than the fee, may precede the remainder, in which case each estate in the series will be a remainder to all which precede it and a particular estate to all which follow." 21 C.J. Estates § 143, p. 990; 31 C.J.S. Estates § 78; 33 Am.Jur. p. 516.

Clearly, Mrs. Bethany is a contingent remainderman, dependent upon whether she outlives Mrs. Brugh. Assume first that she outlives Mrs. Brugh, and therefore her interest thereby became vested, effective during her life. During the life of Mrs. Brugh and after payment to her of her share, there is then no remainderman whose interest has vested. So that, the balance of the fund, after paying Mrs. Brugh, should be invested so as to produce during the life expectancy of Mrs. Brugh an amount approximately equal to the cash value of her life interest. Those two figures should be so fixed that one will approximately equal the other. In that way, when Mrs. Brugh dies, the invested fund will be equal to what it was to start with. Mrs. Bethany will then be entitled to the

use of the fund for her life if she is still living. At the death of Mrs. Brugh, Mrs. Bethany could apply to the court to fix the then present value of her life interest in the fund as was before done for Mrs. Brugh. When it is paid to Mrs. Bethany, there will be a balance remaining. The Act of 1945, supra, provides that this balance is then payable to the remaindermen, but the remaindermen are uncertain until the death of Mrs. Bethany. None of them will take unless they are living at the time of the death of Mrs. Bethany. The balance of the fund should produce income equal, at the death of Mrs. Bethany, to the amount paid her for her interest. So that, when the remaindermen are ascertainable (at the death of Mrs. Bethany), the fund should be the same as it was when it started. It will be approximately that if the steps here outlined are strictly observed.

If Mrs. Bethany dies before Mrs. Brugh, the share of the remaindermen will be payable to them at that time because their share will vest at the death of Mrs. Bethany. Until then, the fund will (or should) produce an amount sufficient to adjust all interests according to their respective rights.

The foregoing proceeding, accurately followed, will result in every interested person getting the share provided for him or her by the will in respect to the tract involved.

█ █ The fund here in question came into the custody of the court in a proceeding within its jurisdiction, and the circuit court possesses plenary power to order the distribution of the fund between the parties according to their respective interest. Sec. 26, Title 19, supra. City of Birmingham v. Hudson, 222 Ala. 332, 132 So. 1. Some of the interests are contingent, as we have shown. The circuit court has plenary power to invest the funds of such interest to abide the time for their distribution. This it may do through trustees, or otherwise, having due regard for their safety and ultimate distribution, in order to preserve and effectuate the intention of the donor.

█ For the foregoing reasons, we think the lower court erred in holding that Sec. 64(1) of Title 47, Code of 1940, did not apply in the situation involved in this case; that the statute was unconstitutional in so far as it attempts to provide a method of distribution in this case; that the rights of the parties became fixed before the passage of the statute, and that the appellees had a substantive or vested right in the condemnation award subject only to the right of the life tenants to the income thereof until the death of the last surviving life tenant. Therefore, the ruling of the lower court must be reversed and the cause remanded with instructions for the trial court to make distribution as indicated in the opinion.

Reversed and remanded with instructions.

SIMPSON and STAKELY, JJ., concur.

GOODWYN, J., concurs in the result.

LAWSON and MERRILL, JJ., dissent as indicated.

COLEMAN, J., having been of counsel on the trial of the cause, in the court below, did not participate.

LAWSON, Justice (dissenting).

I feel constrained to dissent. The opinion of the court neither distinguishes nor overrules our cases which hold in effect that the provisions of Sections 75–87, Title 58, Code of 1940 (The Principal and Income Act), have no application where the life estate came into being before the enactment of those provisions. See Toolen v. Amos, 259 Ala. 346, 67 So.2d 8; Dillard v. Gill, 254 Ala. 5, 47 So.2d 203. Also see First National Bank of Mobile v. Wefel, 252 Ala. 212, 40 So.2d 434, and First National Bank of Birmingham v. Jaffe, 239 Ala. 567, 196 So. 103. Some of the cases just cited above are called to our attention

in brief of appellees, and I think it clear that the trial court relied on the reasoning of those cases in reaching the conclusion which it did in this case. Inasmuch as I have not had an opportunity since this opinion was considered in conference to make a thorough analysis and comparison of those cases with the instant case and the opinion of the court makes no reference to the holdings of those cases, I feel that I should record my dissent at this time. I might add, however, that there are other matters in the court's opinion which I think might well be reconsidered. For instance, the only reason given for the conclusion that Mrs. Bethany is a contingent remainderman is expressed in this sentence: "Clearly, Mrs. Bethany is a contingent remainderman, dependent upon whether she outlives Mrs. Brugh." It seems to me that this sentence, standing alone, indicates that the court is now of the opinion that all remaindermen are contingent inasmuch as their right of enjoyment is dependent upon their outliving a life tenant. I do not understand that to be the law. It may be that the majority does not intend to so hold, but certain it is that no reason is given in the opinion other than that as to why Mrs. Bethany is held to be a contingent remainderman.

MERRILL, Justice (dissenting).

The testatrix died in 1941. At that time, Mrs. Brugh, Mrs. Bethany and the nieces and nephews were living and "in esse." The law in effect at that time provided that the life tenants should have the income from the property, but the remaindermen, on the termination of the life estates, were and are entitled, under the will, to the undiminished body of the estate. To change this by giving effect to a statute which did not become effective until July 9, 1945, to me smacks of ex post facto, but since that term is generally used in connection with criminal law, it may be better said that certainly the act, as applied by the majority, is retrospective in application. I, therefore, dissent.