ALMON, Justice.
This suit for partition or sale for division requires the construction of a will. One area of contention regards the nature of the interests held by the children of the testator following the life estate in the testator’s widow — whether they were contingent remainders or executory devises— and whether the interests of the children who predeceased the widow survived to their issue. The other area of contention is whether the holders of these subsequent interests held as tenants in common with right of survivorship. The trial court held, in effect, that the interests of the predeceased children survived to their issue and that there was no provision for survivor-ship.
On January 29, 1926, William M. King executed the will at issue. After providing for his debts and for a cash bequest to his wife, King’s will continued:
“Third. I devise and bequeath all of my real estate, together with the houses and buildings thereon, the contents of said houses and buildings, the live stock, tools, implements, and other things which shall at the time of my death be in, upon, about, or belonging to the said real estate and buildings thereon, to my said wife, Betsey King, during her life as long as she remain my widow, and from and after her decease or her marriage after my death to my thirteen children, German King, Edward King, William King, Jr., Nicholas King, Abraham King, Joshua King, Felix King, James Wiley Clinton King, Raney Faries, Estella Green, Amanda Peterson, Rosie Lee King, and Bessie May King, the survivor or survivors of them, their heirs and assigns, forever, in equal shares, as tenants in common.
[[Image here]]
“Fifth. All the rest, residue, and remainder of my estate, of which I may die possessed, or to which I may be entitled at the time of my decease, I give and bequeath to my thirteen children, named in the paragraph marked ‘Third ’ above, the survivor or survivors of them, in equal parts.
“Sixth. It is my will and I do direct that in the event any of my said children die before the vesting of any devise or bequest provided herein and said child or children have issue living at the time when said devise or bequest would vest, then the issue of any such deceased child or children will take the devise or bequest provided herein for the father or mother of said issue.”
By the seventh paragraph of his will, King appointed his children German, Joshua, Fe *1243 lix, Abraham, and Raney, “the survivor or survivors of them,” as his executors and executrix.
King died in 1931, survived by his wife Betsey and by all 13 of his children named in paragraph three. Betsey lived until 1969. In the interim, five of the King children died: Edward died without issue in 1947, and the other four apparently died with issue.[1] After Betsey died, but before this suit was filed, six more of the King children died. At the time this suit was filed, only James Wiley Clinton King and Rosa Lee (“Rosie Lee” in the will) King survived.
Suit was filed by William M. King Family Enterprises, Inc., a corporation formed by several descendants of William M. King. The incorporators had transferred whatever interest they owned in the subject property, a 180-acre tract of land, to the corporation. The original complaint sought partition of the property, but after further proceedings, the parties stipulated that the land could not be partitioned in kind and so must be sold for division. All heirs of William M. King other than those participating in the corporation were named as defendants. Only James and Rosa filed answers, however, and the position they have taken is antagonistic to that of all other claimants. The trial court stated in its judgment that the interests of the parties who had not appeared, and whose interests are in fact aligned with the plaintiffs, would be governed by the judgment.
James and Rosa contend that the interest succeeding the life estate was an executory devise creating a tenancy in common with right of survivorship among the 13 named children. Under their theory, they would be the sole remaining owners as tenants in common and the last of them to survive would own the entire property in fee simple. They claim that paragraph six of the will does not affect these interests because the executory devises vested at the death of William M. King, subject to divestment should any children die before Betsey King, and that paragraph six applies only to the death of a named child before his or her interest vests.
The complaint, however, set forth the interests of the descendants of William M. King as though the interest of each child, except that of Edward, who predeceased his mother without issue, passed to the issue of the children who predeceased Bet-sey and to the heirs or devisees of the children who survived her but have since died. The trial court so held. Rather than setting forth the interpretation under which this result would obtain, we address the question by explaining the theory set forth by James and Rosa and by resolving the issues raised.
We first address the nature of the interest passed to the children. James and Rosa’s argument that it is an executory devise begins with Code 1975, § 35-4-212, which has been carried forward without significant change since the Code of 1852:
“No estate in lands can be created by way of contingent remainder, but every estate created by any will or conveyance, which might have taken effect as a contingent remainder, has the same properties and effect as an executory devise.”
Blackstone introduces his discussion of executory devises with the following definition: “An executory devise of lands is such a disposition of them by will, that thereby no estate vests at the death of the devisor, but only on some future contingency.” 2 W. Blackstone, Commentaries *172. As can be seen by the discussion in Chapter 11, “Of Estates in Possession, Remainder, and Reversion,” from which this quotation comes, the chief difference between an executory devise and a contingent remainder, for purposes of determining the effect of § 35-4-212, is that a contingent remainder can be defeated, chiefly by attempts at alienation by the holder of the particular[2] estate, but an executory devise *1244 cannot. Thus, an obvious purpose of the enactment from which § 35-4-212 derives was to make the gift over take effect according to the intention of the grantor and without unwarranted interference by the intermediate holder.
It also appears from Blackstone that a gift that would be a contingent remainder in a deed would be an executory devise in a will, so, under the common law, as stated by Blackstone, the devise to King’s children would be an executory devise even in the absence of § 35-4-212.
“[I]n devises by last will and testament, ... remainders may be created in some measure contrary to the rules before laid down: though our lawyers will not allow such dispositions to be strictly remainders; but call them by another name, that of executory devises, or devises hereafter to be executed.”
2 Blackstone, Commentaries, *172. One reason for this distinction arises from the fact that the entire fee had to pass out of the grantor in the creation of a particular estate (e.g., a life estate) and a remainder, and so the grantor had to give livery of seisin. Because a dead person could not give livery of seisin, such a gift in a will created an executory devise, not a remainder.
“[S]ince by a devise a freehold may pass without corporal tradition or livery of seisin, (as it must do, if it passes at all) therefore it may commence in futuro; because the principal reason why it cannot commence in futuro in other cases, is the necessity of actual seisin, which always operates in praesenti.”
Id., at *173. We make this point chiefly for the sake of interest, however, because in modern usage it is customary to speak of the interest following a life estate created by a will as a “remainder” (Blackstone himself notes that this term was used loosely in reference to such estates in his day).
Furthermore, and more to the point, an executory devise does not vest subject to divestment, but is contingent, as Blackstone explicitly states in the quoted definition. It is a devise that is executory, not executed. There was a time in the history of our law when the interpretation urged by James and Rosa would have prevailed. See Smaw v. Young, 109 Ala. 528, 20 So. 370 (1896); Thorington v. Thorington, 111 Ala. 237, 20 So. 407 (1896). In these cases it was held that interests such as those present here would be vested subject to divestment. However, in Lyons v. Bradley, 168 Ala. 505, 513, 53 So. 244, 247 (1910), it was held that this result had been overturned by the enactment of Code 1907, § 3401 (now Code 1975, § 35-4-211):
“In the Code of 1907 there appeared for the first time a definition of vested and contingent remainders which established as the law of this state the views of McClellan, J., expressed in Smaw v. Young, supra[3] those views being in consonance with the learning of the common law on the subject. Section 3401 of the Code defines a vested remainder as one limited to a certain person at a certain time, or upon the happening of a certain event, and a contingent remainder as one limited to an uncertain person, or upon an event which may or may not happen. This definition restores the fundamental requisite of certainty as to the identity of the remainderman in the constitution of a vested remainder to the office it performed at common law.”
Accord, Crawford v. Carlisle, 206 Ala. 379, 89 So. 565 (1921); Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550 (1945); Stratford v. Lattimer, 255 Ala. 201, 50 So.2d 420 (1951); Brugh v. White, 267 Ala. 575, 103 So.2d 800 (1957).
Thus, the argument proposed by Rosa and James fails in its premise that an exec-utory devise vests subject to divestment. Therefore, since the interests of the children who predeceased Betsey did not vest before they died, paragraph six of the will applies to paragraph three so that the issue of those children took the devised interest. *1245 This is a just result and one in accord with the apparent intent of the testator, because, under James and Rosa’s interpretation, an anomalous result could have occurred. If any of William M. King’s thirteen children with issue had died before him, their issue would have taken a share because the executory devise would not have “vested subject to divestment” prior to their death. Similarly situated grandchildren would not have taken, however, if their parents died after William M. King but before his widow Betsey.
Even if we were to accept James and Rosa’s argument that the devises to the King children in paragraph three were vested remainders subject to divestment, we would not find that the trial court erred in holding as it did. William M. King’s use of the word “vest” in paragraph six is as much susceptible to the interpretation that he meant vested in possession as it is to the interpretation that he meant vested in interest, subject to divestment. The latter is an arcane concept of property law, while the former fits the common notion of “vested.” Thus, since the four children with issue died before their interest vested in possession, the trial court should not be put in error for holding that their issue took a share, even under this interpretation of the law of future interests.
Our holding on this issue undercuts the second argument, that the 13 named children took as tenants in common with right of survivorship. If we accepted this argument after rejecting the first, the result would be that, at the death of Betsey, there would be four one-twelfth interests held by the issue of predeceased children, and the remaining eight-twelfths (two-thirds) would be held with right of surviv-orship by the eight children surviving their mother. We do not see how the severed interests could participate in the survivor-ship provision because they were held by the “issue” of the predeceased devisees,[4] so the situation at time of trial would have been that Rosa and James owned, with right of survivorship, equal undivided interests in an undivided two-thirds of the property, and the remaining undivided third was owned, without survivorship rights, by certain of their nieces and nephews. Such a result could not have been intended.
This finding of the unlikelihood that William M. King intended for rights of surviv-orship to attach to the tenancy in common among his children is supported by the language of the will itself. His use of the words “survivor or survivors of them” is more plausibly interpreted as meaning that those children who survived his widow would take shares, and, when read in light of paragraph six, as meaning that the only interests that would lapse would be those of children dying without issue before Bet-sey. In other words, the shares of predeceased children did not pass to their heirs or devisees, but only to their issue—who were necessarily also issue of the testator and thus were natural objects of his affection and beneficence.
This interpretation of William M. King’s use of the words “survivor or survivors” comports with his use of those terms elsewhere in his will. In paragraph five, the residuary clause, he uses these words in reference to the 13 named children only to mean those who survive him, not to mean that they take the residue of his estate with rights of survivorship. In paragraph seven, he names five of his children and directs that the “survivor or survivors of them” are to serve as executors and executrix of his will; clearly this use of the words has nothing to do with the right of survivorship.
A transfer of property will be held to create a survivorship interest only when the transferring document clearly expresses an intent to do so. See generally, Durant v. Hamrick, 409 So.2d 731 (Ala.1981); Nunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972). William M. King’s will contains no such clear expression of intention, but, on the contrary, can more plausibly be read to *1246 create freehold undivided interests among his children as tenants in common.
Counsel for James has ably argued his case (adopted by counsel for Rosa), chiefly centering on the question of the creation of tenancies in common with right of survivor-ship.
Because we hold, based on an inspection of language within the four corners of the will, that the will did not create such interests, we undertake no reiteration of this body of law, except to make one comment. The use of the words “survivor or survivors” in a deed might possibly suffice to create a survivorship interest, although even there, the word “survivors” creates an ambiguity, because a survivor-ship interest passes to the last, sole, surviv- or. Thus, in a deed, “to A, B, and C, the survivor or survivors of them, as tenants in common,” might be held to create rights of survivorship in an appropriate case. However, in a will, as in the instant case, these words are prone to the ambiguity present here: do they refer to the survivors of the testator, or the survivors of the life tenant, or the survivors as among the remainder-men? Because the last is the least natural construction, this language is not likely to be construed as creating a survivorship interest when used in a will.
The trial court did not err.[5] The judgment is affirmed.
AFFIRMED.
MADDOX, BEATTY, ADAMS and HOUSTON, JJ., concur.

. There is some indication in the record that German also died childless in 1947, but there are other indications that he did have issue. This makes no difference in principle, so we assume that only Edward died without issue.

. The particular estate is so called because it is only part of the fee, with the gift over being the remainder. 2 Blackstone, op. cit., *164.

. Justice McClellan's view was that the interests at issue should be treated as contingent remainders, while the view of the majority (as expressed in the opinion authored by Justice McClellan) was that they should be treated as vested remainders subject to divestment.

. Interestingly, to allow survivorship here would amount to a fee tail: each of the four interests would continue so long as there continued to be issue of the four children who predeceased Betsey. Such a result would clearly be impermissible.

. It does appear that the plaintiff erred in calculating the respective interests, however. For example, Rosa’s interest is given as .8333%, when it should be 8.333%, or Vn. Even with this correction, the interests do not total to 100%. These matters should be examined before the sale for division is held.